**Gary D. NETERER and Lakeview
Dairy Services, Inc.
Defendant–Appellant,**

v.

**Vernon N. SLABAUGH and Bette L.
Slabaugh, Plaintiffs–Appellees.**

No. 43A03–8903–CV–89.

Court of Appeals of Indiana,
Third District.

Jan. 9, 1990.

Paul D. Refior, Warsaw, for defendant-appellant.

Stephen R. Snyder, Jon A. Bragalone, Beckman, Lawson, Sandler, Snyder & Federoff, Syracuse, for plaintiffs-appellees.

GARRARD, Presiding Judge.

Gary D. Neterer (Neterer) and Lakeview Dairy Services, Inc. (LDSI) appeal a $26,-480 judgment in favor of Vernon and Bette Slabaugh on their claim of tortious interference with contract. We reverse.

FACTS

For investment purposes and reportedly to obtain the benefit of income tax advantages, the Slabaughs purchased ten holstein milk cows (numbered 481 through 490) from or through LDSI for $20,000. Neterer is the president of LDSI. The Slabaughs and LDSI then entered into an inspection agreement whereby LDSI would, for a fee, recommend a milking operation, inspect and report quarterly on that farm and the condition of the animals, and collect the rental fees. However, the Slabaugh–LDSI inspection agreement declared that:

> LDSI shall provide no management services of any kind to HERDOWNER nor shall LDSI be required or be responsible for or have authority to act for or on behalf of HERDOWNER in any manner whatsoever with regard to the care, management, supervision, sale or otherwise of said cattle or of HERDOWNER's lessee.

LDSI initially placed the Slabaugh's cattle on the Guggenbiller farm near Hillsdale, Michigan. Slabaugh then requested that his cattle instead be leased to an Indiana farmer. Rather than move the cattle that the Slabaughs had originally purchased, LDSI, possibly without telling the Slabaughs, substituted for the original cattle ten different animals numbered 650 through 659. These cattle were placed on the Strader farm near Columbia City, Indiana. The three-year Strader–Slabaugh cattle lease commenced July 1, 1982. Under the form lease, as provided by LDSI, the farmer-lessee was, among other things, to keep any offspring and could unilaterally cull and replace unproductive or unhealthy cows. Thus, to some degree, the cattle were treated as fungible goods by all the parties. (R. 180, 225). Under the lease the farmer paid the "herdowner" $32 per

month per cow of which LDSI took $5 as the inspection and reporting fee.

The Strader farm began experiencing financial difficulties and was headed towards bankruptcy. Before acquiring the Slabaughs' consent, LDSI moved the cows to the Guggenbiller farm. Apparently everyone agreed that even a 48 hour cessation of milking would have significantly impaired the value of the investment cows. (R. 227). LDSI, through Neterer, then wrote the Slabaughs informing them of the relocation. Vernon Slabaugh admits that he relied upon Neterer to protect the investment and subsequently ratified that move. The Slabaughs have never had the facilities to take possession of these animals. The Slabaughs and Guggenbiller executed a three-year lease agreement dated November 20, 1982.

Nine months later, in August of 1983, LDSI, through Neterer, wrote the Slabaughs seeking their consent to again move the cattle on the grounds that Guggenbiller was unable to secure long-term financing. Moreover, LDSI sought additional monies from the Slabaughs to maintain the cows until they could be moved and also suggested that the Slabaughs demand less rental income until the cows could again be made productive. Along with this letter, LDSI's Neterer sent the Slabaughs documents which would grant Neterer and LDSI a limited power of attorney to act with respect to the Slabaugh cattle. The Slabaughs never signed the documents and claim not to have consented to this third move. Nonetheless, in late August the cattle were placed on the Wyant farm near Urbana, Ohio. The Slabaughs claim to have withheld their consent to move the cattle but they still expected LDSI to "do its job" and protect the investment as well as the income stream flowing therefrom.

No lease or security agreements between the Slabaughs and Wyant were ever executed. The Slabaughs did accept Wyant's rental payments throughout the next two years. Wyant missed his payments in the first quarter of 1985. His operation contin-

ued to decline and he eventually ended up in bankruptcy. All of the Slabaughs' investment in the cattle was lost due either to theft or mismanagement. Some cows had been culled and were never replaced. The variously owned cows remaining on the farm were repossessed and sold, but the Slabaughs received no proceeds. Insurance proceeds were similarly unavailable. The end result was that the Slabaughs recovered none of their original $20,000 investment other than through rental fees and income tax advantages.

In October of 1985 the Slabaughs filed suit against both Neterer and LDSI under a tortious interference with contract theory. In their complaint they alleged that had LDSI, through Neterer, not tortiously interfered with the Guggenbiller–Slabaugh lease by moving the cattle to the Wyant farm, then that contract would have been performed and the Slabaughs would not have lost their cattle as a result of the problems at the Wyant farm. Trial to the bench was held in January of 1987 and in September of 1988 the court issued general findings and entered judgment on behalf of the Slabaughs in the amount of $26,480.[1] That sum represented the $20,000 purchase price of the cattle and $6,480 in rental payments that would have been received from Guggenbiller had the contract been performed.

## ISSUE

LDSI and Neterer present three issues for our review. Because we reverse on the first error alleged, we will discuss only that matter. Our issue then is whether the trial court erred in finding that LDSI or Neterer interfered with the Guggenbiller–Slabaugh lease by moving the cattle without the herd-owner's consent when there was no evidence that the former lessee was induced to breach by the defendant.

## DISCUSSION

The trial court entered general findings. A general finding is merely "a finding in favor of one party and against another, . . .

---

1. We do not herein reach the issue of computa-   tion of damages.

[so] the reviewing court will affirm the judgment of the trial court if it is sustainable upon any legal theory which is supported by the evidence." 3 Harvey, *Indiana Practice* § 52.6 (2nd ed. 1988). *See also Hunter v. Milhous* (1973), 159 Ind.App. 105, 123, 305 N.E.2d 448, 459. Here, however, the evidence will not support the judgment.

An action for tortious interference with a contract has the following five elements:

(1) existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justifications; and (5) damages resulting from defendant's wrongful inducement of the breach.

*Biggs v. Marsh* (1983), Ind.App., 446 N.E.2d 977, 983. LDSI and Neterer appear not to have raised, and have thereby waived their statute of limitations affirmative defense; nonetheless, the Slabaughs' claim still fails on this appeal for failure to make a prima facie showing of tortious interference.

Nothing in the record will support a finding that either LDSI or Neterer induced Guggenbiller to breach. Guggenbiller was on the verge of breach when LDSI moved the cattle to Wyant's farm in an effort to protect the Slabaughs' interests. In fact, Slabaugh knew that *Guggenbiller asked Neterer* to relocate the cows. (R. 193, 230). Guggenbiller did not testify at trial, yet uncontradicted evidence adduced thereat suggests that the source of Guggenbiller's impending breach was a lack of long-term financing and had nothing to do with the acts of either LDSI or Neterer. (R. 230, 320). Guggenbiller was apparently the victim of a financing scam and was caught without the ability to finance the milking operation. (R. 230). Inducement in this context is analogous to causation. Restatement (Second) of Torts § 766 Comment h (1979). Neither Neterer nor LDSI

caused Guggenbiller to breach. Removing the cattle did not cause the breach.[2] The causation was external to the LDSI–Guggenbiller relationship. We do not reweigh evidence upon appeal, but, when no evidence is presented on an essential element of the plaintiff's action, a plaintiff's judgment cannot withstand our scrutiny.

Reversed.

RATLIFF, C.J., and HOFFMAN, J., concur.

---

2. In fact, it would have mitigated the Slabaughs' damages in a contract action they could not or would not bring against Guggenbiller.