**GALLANT INSURANCE COMPANY,**
Appellant (Plaintiff below),

v.

**Christina ISAAC and Loretta Davis,**
Appellees (Defendants below).

No. 49S02–0011–CV–718.

Supreme Court of Indiana.

July 23, 2001.

Thomas R. Harper, Kopa Landau & Pinkus, Indianapolis, IN, Attorney for Appellant.

Robert D. Epstein, Epstein & Frisch, Mark R. Smith, Smith Fisher Maas & Bishop, Indianapolis, IN, Attorneys for Appellees.

**ON PETITION TO TRANSFER**

SULLIVAN, Justice.

Christina Isaac filed an auto insurance claim with Gallant Insurance Company. Gallant contends that she had no coverage because the insurance agency where she purchased the policy, Thompson–Harris Company, did not have authority to bind it.

The Court of Appeals held that Thompson–Harris had "inherent authority" to bind Gallant. The doctrine of "inherent authority" has no application in this case. However, Gallant's dealings with Isaac did establish coverage under the doctrine of "apparent authority."

### Background

In this insurance coverage dispute, Gallant Insurance Company sought a declaratory judgment that automobile insurance coverage was not in effect in respect of a claim filed by Christina Isaac. Isaac and a second plaintiff, Loretta Davis, sought summary judgment on the same issue.

Isaac had acquired insurance on a Pontiac Fiero through Gallant's independent agent, Thompson–Harris Company, in 1994. On the last day that that coverage was in effect, Isaac traded the Fiero for a Pontiac Grand Prix. As explained by the Court of Appeals in its opinion in this case:

> To obtain the newly purchased car, the financing bank required Isaac to obtain full coverage on it. That same day, Isaac contacted Thompson–Harris to notify it that she was purchasing the new car, and to discuss enhancing the existing insurance policy to meet bank requirements. Isaac told a Thompson–Harris employee that she must obtain 'full insurance coverage' as a condition to receiving a loan. She also told the employee at Thompson–Harris that her current coverage expires on December 3, 1994, the next day.
>
> In response, the Thompson–Harris employee informed Isaac that because their agency was about to close for the weekend, she would immediately 'bind' coverage on the 1988 Grand Prix. They decided that Isaac would come in to Thompson–Harris on Monday, December 5, 1994, to complete the paperwork and pay the down payment on the premium. The employee also informed

Isaac that the new coverage on her Pontiac Grand Prix would include the same coverage existing from her Pontiac Fiero, along with additional coverage to comply with conditions set by the bank.

The next day, on December 3, 1994, a different employee completed the 'Personal Policy Change Request.' This form deleted the 1987 Pontiac Fiero from Isaac's Policy and replaced it with the 1988 Pontiac Grand Prix. It also added additional coverage to the policy as well as additional loss payee/lienholder. The Personal Policy Change Request listed the 'Agency' and 'Producer' as Thompson–Harris, and stated that the 'effective date of change' was December 3, 1994. Towards the bottom of the form, the Thompson–Harris employee typed '[s]he will be in at 9:00 a.m. Monday, 12/5/94, to [sic] down [sic] on renewal. What is [sic] new rate? Thanks.' (R. 380). This form, which requested the listed changes, was faxed to Insurance Brokers of Indiana, Inc., on December 3, 1994.

On December 4, 1994, while driving her Pontiac Grand Prix, Isaac collided with another car in which Davis was a passenger. The next day, as planned, Isaac went to Thompson–Harris and paid $133.00 down payment on the new insurance policy. She also reported the accident. Thompson–Harris completed an 'Indiana Operator's Vehicle Crash Report,' which notified the State Police that Isaac had insurance coverage at the time of the accident, on December, 4, 1994. Thompson–Harris completed that form on behalf of Gallant. Later, on or about December 22, 1994, Gallant renewed Isaac's insurance policy, with an effective period of December 6, 1994 to June 6, 1995.

*Gallant Ins. Co. v. Isaac*, 732 N.E.2d 1262, 1265–66 (Ind.Ct.App.2000) (quotations in

original). When Isaac submitted a claim to Gallant in respect of the December 4 accident, Gallant took the position that no coverage was in force on that date. As noted, the company sought a declaratory judgment to that effect. Isaac and Davis (who had been a passenger in the vehicle which collided with Isaac's) each sought summary judgment on that question, which the trial court granted.

The Court of Appeals affirmed. *See Isaac*, 732 N.E.2d at 1270. In doing so, it held that Thompson–Harris had "inherent authority" to bind Gallant, relying on our decision in *Menard, Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1211 (Ind.2000), *reh'g denied*. While we agree with the result reached by the trial court and Court of Appeals, we do so for reasons different than those given by the Court of Appeals. We granted transfer to explain why the concept of "apparent authority," rather than the concept of "inherent authority" discussed in *Menard*, is applicable in this case. *Gallant Ins. Co. v. Isaac*, 741 N.E.2d 1259 (Ind.2000) (table).

*Discussion*

I

■ *Menard* was a dispute over whether the president of a corporation who signed an agreement to sell certain corporate-owned real estate had authority to do so. We began our analysis of the question by recognizing the two main classifications of authority: "actual authority" and "apparent authority." *Menard*, 726 N.E.2d at 1210. Actual authority, we said, is created "by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *Id.* (citing *Scott v. Randle*, 697 N.E.2d 60, 66 (Ind.Ct. App.1998), *transfer denied*; Restatement (Second) of Agency §§ 7, 33 (1958)). And we said that apparent authority refers to a

third party's reasonable belief that the principal has authorized the acts of its agent; it arises from the principal's indirect or direct manifestations to a third party and not from the representations or acts of the agent. *Id.* (citing *Pepkowski v. Life of Indiana Ins. Co.*, 535 N.E.2d 1164, 1166–67 (Ind.1989); *Drake v. Maid–Rite Co.*, 681 N.E.2d 734, 737–38 (Ind.Ct.App. 1997), *reh'g denied.*).

■ In *Menard*, we also discussed a third form of agency relationship—"inherent authority"—which is grounded in neither the principal's conduct toward the agent nor the principal's representation to a third party, but rather in the very status of the agent. *Id.* at 1211–12. The concept of inherent authority "originates from the customary authority of a person in the particular type of agency relationship." *Id.* at 1211 (citing *Cange v. Stotler & Co.*, 826 F.2d 581, 591 (7th Cir.1987) (citing in turn Restatement (Second) of Agency § 161 cmt. b (1958))).

Because the agent at issue in *Menard* was the president of the company, we found the concept of inherent authority—rather than actual or apparent authority—controlled our analysis. We said that the purchaser "did not negotiate and ultimately contract with a lower-tiered employee or a prototypical 'general' or 'special' agent, with respect to whom actual or apparent authority might be at issue. [The purchaser] dealt with the president of the corporation, whom [t]he law recognizes . . . [as one of] the officers [who] are the means, the hands and the head, by which corporations normally act." *Id.* at 1212 (internal quotations and citations omitted).

■ Thompson–Harris, the insurance agency with which Isaac dealt in this case, was, in our view, the "prototypical 'general' or 'special' agent, with respect to whom actual or apparent authority might be at

issue." *Id.* It was not an agent with inherent authority, *i.e.,* a person with a particular status like president. *Cf. id.* (holding that the president of the company had inherent authority); *Fidelity & Casualty Co. v. Carroll,* 186 Ind. 633, 635–36, 117 N.E. 858, 859 (1917) (ruling that a corporation's "executive or administrative officers .... may be termed its inherent agencies"); *Community Care Centers, Inc. v. Indiana Dep't of Pub. Welfare,* 468 N.E.2d 602, 604 (Ind.Ct.App.1984) (holding that the corporate attorney did not have inherent authority to bind corporation), *transfer denied; Burger Man, Inc. v. Jordan Paper Prod., Inc.,* 170 Ind.App. 295, 311–13, 352 N.E.2d 821, 831–32 (1976) ("When the president and general manager does an act within the domain of the general objects or business of the corporation, and within the scope of the usual duties of the chief officer, it will be presumed that he had the authority to do it, and whoever would assert the contrary must prove it."). The Court of Appeals erred in holding that Thompson–Harris had inherent authority to bind Gallant.[1]

## II

Although we find no basis for concluding that Thompson–Harris had inherent authority to bind Gallant, we do conclude from our review of the designated evidence that there was no genuine issue of material fact on the issue of whether Thompson–Harris had apparent authority to bind Gallant and therefore that the plaintiffs were entitled to summary judgment on the coverage issue as a matter of law. *See* Ind. Trial Rule 56(C).

This court last dealt with the question of apparent authority in the insurance context in *Pepkowski v. Life of Indiana Ins. Co.,* 535 N.E.2d 1164 (Ind. 1989). In that case, the question was whether an employee of the plaintiff's employer who handled group health insurance for the employer had apparent authority to bind the insurance company providing the group coverage. In finding the employee not to have apparent authority, we described apparent authority as follows:

Apparent authority is the authority that a third person reasonably believes an agent to possess because of some manifestation from his principal. *Warner v. Riddell Nat'l Bank,* 482 N.E.2d 772, 775 (Ind.Ct.App.1985)[, *transfer denied.*] *See also Grosam v. Laborers' Int'l Union of N. Am.,* 489 N.E.2d 656, 658 (Ind.Ct.App.1986)[, *transfer denied.*] The necessary manifestation is one made by the principal to a third party, who in turn is instilled with a reasonable belief that another individual is an agent of the principal. *Swanson v. Wabash College,* 504 N.E.2d 327, 332 (Ind.Ct. App.1987); *Storm v. Marsischke,* 159 Ind.App. 136, 304 N.E.2d 840, 842 (1973); *Kody Eng'g Co. Inc. v. Fox & Fox Ins. Agency Inc.,* 158 Ind.App. 498, 505–06, 303 N.E.2d 307, 311 (1973). It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable be-

---

1. In *Menard,* after differentiating inherent authority from actual and apparent authority, we went on to point out that the acts of an agent with inherent authority only bind the principal where (1) the acts done are those which usually accompany or are incidental to transactions which the agent is authorized to conduct if, although they are forbidden by the principal, (2) the other party reasonably believes that the agent is authorized to do them, and (3) the other party has no notice that he is not so authorized. *See Menard,* 726 N.E.2d at 1212. As such, these factors test when the acts of a person with inherent authority will be enforced against the agent's principal. However, the Court of Appeals instead used these factors to determine whether Thompson–Harris had inherent authority. *See Isaac,* 732 N.E.2d at 1267. This was not correct.

lief in the mind of the third party. *Swanson,* 504 N.E.2d at 332; *Storm,* 304 N.E.2d at 843. Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship. *Swanson,* 504 N.E.2d at 332; *Storm,* 304 N.E.2d at 843.

*Pepkowski,* 535 N.E.2d at 1166–67.

■ Applying these principles to the case at hand, it seems to us that the key is determining whether Gallant made the "necessary manifestation" to "instill a reasonable belief in the mind of" Isaac that Thompson–Harris had authority to transfer the coverage from her Fiero to her Grand Prix and renew the policy. There are several additional cases, some cited in *Pepkowski,* that help us with this determination.

First, it is clear that the "manifestations" referred to in *Pepkowski* need not be in the form of direct communications, "but rather the placing of the agent in a position to perform acts or make representations which appear reasonable to a third person is a sufficient manifestation to endow the agent with apparent authority." *Herald Telephone v. Fatouros,* 431 N.E.2d 171, 175 (Ind.Ct.App.1982) (quoting *Burger Man, Inc.,* 170 Ind.App. at 312, 352 N.E.2d at 832).

*Storm v. Marsischke* explained that "[s]uch a manifestation by the principal may be found .... where the principal clothes or allows a special agent to act with the appearance of possessing more authority than is actually conferred." 159 Ind.App. 136, 138, 304 N.E.2d 840, 842–43 (1973) (citing *Farm Bureau Mutual Ins. Co. v. Coffin,* 136 Ind.App. 12, 186 N.E.2d 180 (1962)). In the *Coffin* case, an insured had called his auto insurer's home office and said that he wanted to transfer his insurance from a Chevrolet to a Buick and increase his coverage. He was connected with one James R. Pierson who told him

that he had the coverage he sought as of that moment. As it turned out, Pierson was not an insurance agent but the Typing Supervisor in the Auto Underwriters Department. The insured subsequently presented a claim, which the insurer denied on the basis that Pierson had no authority to bind the company. The Court of Appeals held that the insurer had "clothed Pierson with apparent authority. [Insured] called the [insurer's] home office and stated that he wanted to transfer his insurance. Employees of the [insurer] (principal) then connected [insured] (third party) with Pierson (apparent general agent)." 136 Ind.App. at 19, 186 N.E.2d at 184.

In *Old Line Auto. Insurors v. Kuehl,* an insured had for some time prior to the issuance of the auto insurance policy at issue in the case dealt with the insurer through one Donald R. Crabb. He purchased a policy on a Studebaker through Crabb. Crabb subsequently arranged the transfer of the coverage of that policy from the Studebaker to a Dodge. When the insurer sent the insured the policy, it did not tell the insured that it would not be responsible for payments made to its agent Crabb. The insured in fact paid his premiums to Crabb who, at some point in time, failed to forward them to the insurer. When this occurred, the insurer did not notify the insured that the policy was cancelled. The insured subsequently presented a claim, which the insurer denied on the basis that the policy had been cancelled. The Court of Appeals held that "[u]nder these circumstances we believe [the insured] was justified in believing that Crabb, as the agent of [the insurer], had the authority to collect the premiums due on the policy in question here." 127 Ind.App. 445, 455, 141 N.E.2d 858, 862 (1957).

In the case before us today, the undisputed facts show that when Isaac first

acquired the Gallant policy on her Fiero, a Thompson–Harris employee filled out Gallant's pre-printed insurance application form. After the pre-printed application form and a pre-application checklist were signed by Isaac and the employee, the employee told Isaac that her coverage with Gallant would be "bound" as of June 2, 1994. The employee further told Isaac that she would receive the actual insurance policy from Gallant in the near future. Isaac did in fact receive Gallant Indiana Personal Auto Policy No. IN 04151290 shortly thereafter. When one of Isaac's premiums was not received on time, Gallant issued a written "Notice of Cancellation" indicating that the policy would be canceled if the premium was not received by a particular date. When payment was received before that date, Insurance Premium Company, which received Isaac's premium payments on behalf of Gallant, issued an "Agent Notification of Reinstatement" to Thompson–Harris and a reinstatement notice to Isaac.

While Gallant argues that some of the designated evidence raises an issue of fact concerning Thompson–Harris's *actual* authority to bind Gallant, the evidence appears to us without dispute that Thompson–Harris had *apparent* authority to bind Gallant, *e.g.*, Gallant's dealings with Isaac just recited contained the manifestations required under applicable case law to cause Isaac reasonably to believe that Thompson–Harris had authority to bind Gallant.

We have already recounted under *Background, supra,* Isaac's contacts with Thompson–Harris at the time of the purchase of the Grand Prix and the accident. While Gallant again argues that there are some factual disputes surrounding these events, the evidence appears to us uncontroverted that no Thompson–Harris employee gave Isaac any indication that cov-

erage on the Grand Prix was not in force. *Cf. Michigan Mut. Ins. Co. v. Sports, Inc.,* 698 N.E.2d 834, 840 n. 17 (Ind.Ct.App. 1998) ("If the third person knows, or in the exercise of reasonable care should know, that the agent is exceeding the agent's actual authority, the principal will not be bound"), *transfer denied.*

Because we find that Thompson–Harris had apparent authority to bind Gallant with respect to Isaac, we hold that it was appropriate for the trial court to grant summary judgment to the plaintiffs on the question of whether Isaac had coverage under the Gallant policy at the time of her accident.

*Conclusion*

Having previously granted transfer, thereby vacating the opinion of the Court of Appeals, *see* Ind. Appellate Rule 11(B)(3), we now affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.