**Steve MALONE, d/b/a IBI/Cousins Insurance Agency and Gallant Insurance Company, a Member of Warrior Insurance Group, Inc., Appellants–Defendants,**

v.

**Anna M. BASEY and Sharon Basey, Appellees–Plaintiffs.**

No. 73A01–0112–CV–451.

Court of Appeals of Indiana.

June 19, 2002.

Karl L. Mulvaney, Dennis F. Cantrell, Nana Quay–Smith, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellants, Gallant Insurance Company and Warrior Insurance Group, Inc.

Peter Campbell King, Cline, King & King, P.C., Columbus, IN, Kris Meltzer, Stubbs & Meltzer, Shelbyville, IN, Attorneys for Appellees.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Defendants–Appellants, Gallant Insurance Company (Gallant), a member of Warrior Insurance Group, Inc., and Warrior Insurance Group, Inc. (Warrior), appeal the trial court's order granting partial summary judgment to Plaintiffs–Appellees, Anna M. Basey and Sharon Basey (Anna and Sharon individually, and "the Baseys" collectively).

We affirm.[1]

### ISSUES

Gallant and Warrior raise several issues for our review, which we consolidate and restate as follows:

1. Whether the trial court properly granted partial summary judgment in favor of the Baseys, finding that Gallant's insurance coverage of Anna's vehicle was in full force and effect on November 1, 1997, based on the apparent authority of Malone, as an agent, to bind Gallant.

2. Whether the trial court erred in entering judgment against Warrior.

### FACTS AND PROCEDURAL HISTORY

On July 22, 1997, Anna purchased a 1993 Chevrolet Camaro. On September 14, 1997, Anna's automobile insurance policy with Indiana Farmers Insurance lapsed due to non-payment of the premium. On November 1, 1997, Anna and her father, Bruce Basey, met with Steve Malone (Malone) d/b/a Cousins Insurance Agency (Cousins) in order to purchase full coverage automobile insurance for her 1993 Chevrolet Camaro. During their meeting, Anna tendered a premium payment to Malone for an insurance policy to cover her automobile. Malone indicated that he would secure automobile insurance for Anna. Malone was acting within the usual and ordinary scope of his duties and responsibilities as an insurance agent for Gallant when he took the premium from Anna and forwarded the application of insurance to Gallant through Insurance Brokers of Indiana, Inc. (IBI).

On November 11, 1997, Gallant issued a policy of insurance covering Anna and her 1993 Chevrolet Camaro effective November 2, 1997, through November 2, 1998. On November 19, 1997, Gallant sent a letter to the Baseys indicating that it had erroneously issued a policy of insurance with a declaration page indicating an effective date of November 2, 1997. This letter indicated that the policy was being cancelled effective December 12, 1997, because the insurance application was incomplete. On December 11, 1997, Gallant reissued a new policy effective November 4, 1997 through November 4, 1998. Anna's premium payment was applied toward the corrected policy. This policy was bound one day after an accident involving Anna's vehicle. Anna lost control of her vehicle and caused a one-car accident on November 2, 1997.

It is undisputed that Malone did not provide the entire and complete application for insurance to IBI on November 1, 1997. In fact, Malone admitted in his letter to the State Insurance Department that, "the third page of the application did not go through on 11/1/97." (Appellants' App. p. 170). Malone further stated in his letter that this page was re-faxed on November 3, 1997. However, IBI processed it as a new application for insurance and bound it effective November 4, 1997 through November 4, 1998.

At this time, Gallant's binding underwriting guidelines were as follows:

### XIII. BINDING PROCEDURES

A. To bind coverage, call our 24–hour binder phone or send a facsimile transmittal of the completed application or endorsement (refer to chart in the next column for the telephone numbers).

---

**1.** We note that the Baseys raise one (1) issue, which we construe as a cross-appeal, and restate as whether Gallant is able to claim in good faith that Malone could not bind the Gallant policy on November 1, 1997, based on past conduct between the parties. Because we affirm the decision of the trial court, holding that Malone had the apparent authority to bind Gallant, we find that there is no need to specifically address the issue of bad faith.

New or endorsement coverage is considered bound as of the date and time requested, provided:

1. Application or endorsement is received in our office within ten (10) days of the call or fax; and

2. Application or endorsement is completed and signed by the applicant and/or producer (an incomplete application will be returned unbound); and

3. Applicant makes the required payment on the date of the application or endorsement.

(Appellants' App. p. 188).

On November 1, 1997, Malone followed Gallant's binding procedures. The application for insurance was completed and signed by Anna. Anna also tendered the required payment on the date of her application for insurance. It is common practice in the insurance industry that once a person enters an insurance agency and tenders a premium payment, the insurance agent indicates to the person that he/she is bound and covered by insurance. Here, Anna tendered a premium payment to Malone and he indicated that he would secure insurance for her automobile. Anna stated in her deposition on October 5, 2000, that she specifically met with Malone on November 1, 1997, in order to obtain insurance coverage on her automobile. Anna also stated that after tendering the premium payment, she assumed that she was covered when she left Malone's office.

On June 19, 1999, the Baseys filed their Complaint for Damages and Request for Trial by Jury against Malone and Gallant. Count I of the complaint alleged that Malone and Cousins negligently failed to procure automobile insurance for Anna. Count II of the complaint alleged that Gallant failed to properly investigate and settle a known loss and thus acted in bad faith. Count III of the complaint alleged that Sharon co-signed a bank note so Anna could obtain a loan to pay for the car for which insurance was sought and that Gallant "acted wantonly and oppressively in seeking to evade collision coverage payments under the policy purchased by [Anna]." (Appellants' App. p. 25). On October 12, 1999, Gallant filed Defendant's Answer to Plaintiffs' Complaint for Damages, generally denying that it improperly denied coverage because no valid policy existed at the time of Anna's accident.

The Baseys filed a Motion for Summary Judgment on Liability against Gallant on October 4, 1999. On November 11, 1999, Gallant filed its Response in Opposition to Plaintiffs Motion for Summary Judgment.

On January 6, 2000, a hearing was held on the motion for summary judgment. The trial court took the matter under advisement and, on February 17, 2000, denied the Baseys' Motion for Summary Judgment on the issue of Gallant's liability.

On October 31, 2000, the Baseys filed Plaintiffs' Motion for Summary Judgment and Plaintiffs' Memorandum in Support of Summary Judgment as to Defendant, Gallant Insurance Company, on the Issue of Liability because the Gallant Policy was Bound by Defendant, Steve Malone d/b/a Cousins Insurance Agency. On November 20, 2000, Gallant filed a Cross–Motion for Summary Judgment against Steve Malone d/b/a Cousins Insurance Agency and a Motion for Summary Judgment as to Bad Faith. The Baseys filed Plaintiffs' Response to Defendant, Gallant Insurance Company's Motion for Summary Judgment on February 5, 2001.

On February 14, 2001, a hearing was held on the following relevant issues: the Baseys' Motion for Summary Judgment, Gallant's Cross–Motion for Summary Judgment, and Gallant's Motion for Summary Judgment on the issue of bad faith.

On May 11, 2001, the trial court denied the Baseys' Motion for Summary Judgment noting that it might revisit the issue if our supreme court affirmed the decision in *Gallant Ins. Co. v. Isaac*, 732 N.E.2d 1262 (Ind.Ct.App.2000). The May 11, 2001 Order also denied Gallant's Cross–Motion for Summary Judgment and Gallant's Motion for Summary Judgment, on the issue of bad faith.

On May 2, 2001, the Baseys filed a Motion for Leave to Amend Complaint seeking to add Warrior as a party. This motion was granted and, on June 21, 2001, the Baseys filed their Amended Complaint in order to add Warrior as a party.

On November 22, 2000, our supreme court granted transfer in *Isaac*. On July 23, 2001, in *Gallant Ins. Co. v. Isaac*, 751 N.E.2d 672 (Ind.2001), our supreme court affirmed the decision of the trial court and vacated this court's opinion and held that an agent has apparent authority to bind the insurer. On August 2, 2001, the Baseys filed a Motion to Reconsider the Plaintiffs' Motion for Partial Summary Judgment filed on October 31, 2000. On August 31, 2001, Gallant and Warrior filed their Answer to the Baseys' Amended Complaint generally denying any bad faith. Gallant and Warrior filed their Response to the Motion to Reconsider the Baseys' Motion for Partial Summary Judgment on September 5, 2001. The Baseys filed a reply brief on October 9, 2001.

On October 11, 2001, the trial court heard oral argument on the summary judgment issues. On November 1, 2001, the trial court issued its order on the renewed partial summary judgment motion. After hearing argument, re-examining the designated materials and briefs, including the case of *Gallant Ins. Co. v. Isaac*, 751 N.E.2d 672 (Ind.2001), and taking the matter under advisement, the trial court found that:

1) There exists no genuine issue of material fact and [the Baseys] are entitled to judgment as a matter of law on the issue that the Gallant automobile insurance policy to [Anna] was bound and effective as of November 1, 1997, based upon the apparent authority of Defendant Steve Malone, as an agent, to bind Gallant Insurance Co.

2) There being no just reason for delay, judgment is entered for [the Baseys] and against [Gallant and Warrior] on the issue that the Gallant automobile insurance policy issued to [Anna] was bound and effective as of November 1, 1997.

(Appellants' App. p. 918–19).

Gallant and Warrior now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

The trial court's decision on summary judgment enters appellate review clothed with a presumption of validity. *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 874 (Ind.Ct.App.1998), *reh'g denied, trans. denied*. Nevertheless, summary judgment is improper when genuine issues of material fact exist and the moving party is not entitled to judgment as a matter of law. *Id.* On summary judgment review, an appellate court applies the same standard and undertakes essentially the same inquiries as the trial court. *Id.* We consider all designated evidence in the light most favorable to the non-moving party, and determine whether a genuine issue of material fact exists and whether the trial court correctly applied the law. *Id.*

In the present case, the trial court entered a general finding that Anna's insurance policy was in full force and effect on November 1, 1997. A general finding is

merely "a finding in favor of one party and against another, ... [so] the reviewing court will affirm the judgment of the trial court if it is sustainable upon any legal theory which is supported by the evidence." *Neterer v. Slabaugh,* 548 N.E.2d 832, 833–34 (Ind.Ct.App.1990), *trans. denied* (quoting 3 Harvey, *Indiana Practice* § 52.6 (2nd ed. 1988)). Because we find evidence to support the trial court's partial summary judgment that Malone, as an agent of Gallant, acted within his scope of apparent authority, we affirm. Additionally, we affirm because we find evidence to support Warrior being bound by the judgment of the trial court.

## II. Malone had the Apparent Authority to Bind Gallant

Gallant and Warrior argue that the trial court's entry of partial summary judgment in favor of the Baseys was contrary to law. Specifically, Gallant and Warrior argue that an independent agent is the agent of the insured and has no authority to bind the insurer. Therefore, Gallant and Warrior assert that Malone was the agent of Anna and did not have the apparent authority to bind Gallant.

■■■ Generally, an insurance agent representing several companies is considered to be an insurance broker. An insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured. *Anderson Mattress Co. v. First State Ins. Co.,* 617 N.E.2d 932, 939 (Ind.Ct.App.1993) *trans. denied.* However, Indiana courts have consistently determined that an insurance broker becomes the agent of the insurer when an insurance policy is issued. "In Indiana when a broker makes [an] application for insurance and the insurance policy is issued, the broker is the agent of the insurer and can bind it within the scope of his authority." *Aetna Ins. Co. of the Mid-*

*west v. Rodriguez,* 517 N.E.2d 386, 388 (Ind.1988), *reh'g denied.*

> [A]n agent [ ], who operates an independent insurance agency representing several insurers, is considered a broker.... In such a situation, the broker is normally deemed to be an agent of the buyer, not the insurer, and the insurer is not liable for the broker's tortious conduct. When, however, the broker makes application for insurance and the insurance policy is issued, the broker is the agent of the insurer and can bind it within the scope of his authority.

*Callis v. State Auto. Ins. Co.,* 579 N.E.2d 129, 131 (Ind.Ct.App.1991) *trans. denied.* (citations omitted).

■■■ In the present case, Malone operates an independent insurance agency and is considered a broker because his agency represents several insurers. Normally, Malone would be deemed an agent of the buyer, not the insurer. *See Anderson Mattress Co.,* 617 N.E.2d at 939. However, Malone submitted an application for insurance on behalf of Anna and an insurance policy was issued. Therefore, Malone is the agent of Gallant and can bind it within the scope of his authority. *Id.*

In *Gallant Ins. Co. v. Isaac,* 751 N.E.2d 672 (Ind.2001), our supreme court described apparent authority in the insurance context as follows:

> Apparent authority is the authority that a third person reasonably believes an agent to possess because of some manifestation from his principal. The necessary manifestation is one made by the principal to a third party, who in turn is instilled with a reasonable belief that another individual is an agent of the principal. It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party. Statements or manifestations

made by the agent are not sufficient to create an apparent agency relationship. *Isaac*, 751 N.E.2d at 676–77 (citing *Pepkowski v. Life of Indiana Ins. Co.*, 535 N.E.2d 1164 (Ind.1989)) (citations omitted).

Applying the above principles to the case at hand, it is apparent that the key is determining whether Gallant made the necessary manifestations to instill a reasonable belief that, in the mind of Anna, Malone had authority to bind Gallant.

■ Under Indiana law, it is clear that "manifestations" do not need to be in the form of direct communications. *Isaac*, 751 N.E.2d at 677. The placing of an agent in a position to perform acts or make representations that appear reasonable to a third person is a sufficient manifestation to endow the agent with apparent authority. *Id.* This manifestation by the principal may be found ... "where the principal clothes or allows a special agent to act with the appearance of possessing more authority than is actually conferred." *Id.* An agent may bind an insurer where there is evidence of past acts performed which could reasonably lead the third party to believe the agent is clothed with the apparent authority to bind. *Michigan Mut. Ins. Co. v. Sports, Inc.*, 698 N.E.2d 834, 840 (Ind.Ct.App.1998), *trans. denied.*

■ In the instant case, the evidence reflects that apparent authority was present because Gallant placed Malone in a position to perform acts or make representations that appear reasonable to Anna. *See Isaac*, 751 N.E.2d at 677. The evidence demonstrates sufficient manifestations endowing Malone with apparent authority. *Id.* As stated above, Malone acted within the usual scope of his duties and responsibilities as an insurance agent for Gallant when he took the premium from Anna and forwarded the application of insurance to IBI. The record shows that Malone regularly accepted premium payments for Gallant. He believed that accepting payments for Gallant was a normal act of an insurance transaction that he was authorized to conduct on behalf of Gallant. Furthermore, the record reflects that on November 1, 1997, Malone had the ability to bind Gallant for the purposes of issuing policies of insurance pursuant to certain Gallant Indiana Underwriting Guidelines. It appears that on November 1, 1997, Gallant authorized Malone to bind insurance through a course of prior dealings. Prior to November 1, 1997, Malone bound insurance policies for Gallant when customers came into his office, paid a premium, and signed an application for insurance. Gallant never objected or indicated that Malone was not capable of or did not have the authority to place people with insurance from Gallant. Malone obviously had a history of providing Gallant with new customers by accepting their money and tendering it to Gallant with signed applications for insurance. Gallant placed Malone in a position to perform the acts of accepting money, completing applications for insurance, and binding policies of insurance. These acts appear reasonable to a person, like Anna, and are sufficient manifestations of apparent authority. *See Isaac*, 751 N.E.2d at 677.

Malone never indicated to Anna or her father that the insurance policy for her 1993 Chevrolet Camaro was not bound and/or covered by Gallant. Malone said nothing, nor provided Anna with any information that would indicate, that he was not an agent authorized to bind a policy of insurance with Gallant upon payment of her premium. Rather, Malone accepted Anna's premium payment in the amount of $308.00 and specifically indicated that he "would make sure that insurance was secured" for Anna's vehicle. (Appellants' App. p. 175).

The personal automobile application form utilized by Malone to secure automobile insurance for Anna contained a box indicating that the company, "CO", that Anna was submitting her application for insurance was "Gallant" and the "PLAN" was for "Auto" insurance. (Appellants' App. p. 269). The second page of the personal automobile application was signed by Anna and stated that the binder date was November 1, 1997 at 11:00 am. (Appellants' App. p. 270). Additionally, the Warrior Insurance Group, Inc., Gallant Insurance Company Indiana Auto Application contained the following in the bottom right hand corner: "Bound By: Fax, Initials: SM, Dated: 11–1–97, Time: 11:00 am." (Appellants' App. p. 271). Clearly, the application completed by Malone and Anna shows that Malone was acting as an agent of Gallant.

Here, Gallant's Binding Procedures clearly state that new coverage is considered bound as of the date and time requested provided: 1) the application is received in Gallant's office within ten (10) business days of the fax; 2) the application is completed and signed by the applicant and/or producer; and 3) the applicant makes the required payment on the date of the application or endorsement. (Appellants' App. p. 188). Malone assisted Anna in completing and signing the application for insurance forms, accepted Anna's premium payment, and faxed the application to IBI all on November 1, 1997. Further, the application appears to have been received in Gallant's office within ten (10) business days of the fax because the policy was bound as a result of Malone's actions.

With the above in mind, the evidence demonstrates that Gallant placed Malone in a position to perform duties that appear to a reasonable person, like Anna, to be a sufficient manifestation of apparent authority. *Isaac*, 751 N.E.2d at 677. Anna believed that her vehicle was insured when she left Cousins on November 1, 1997. Gallant "clothed" or allowed Malone to act with the appearance of possessing more authority than actually conferred. *Michigan Mut. Ins. Co.*, 698 N.E.2d at 840. Accordingly, we find that the trial court properly granted partial summary judgment in favor of the Baseys. The Gallant automobile insurance policy issued to Anna was bound and effective as of November 1, 1997, based on the apparent authority of Malone, as an agent, to bind Gallant.

### III. Warrior was a party bound by the trial court's judgment

Gallant and Warrior contend that Warrior should not be bound by the judgment of the trial court. Specifically, Gallant and Warrior assert that the Baseys filed their Motion for Summary Judgment on Liability before seeking to add Warrior as a defendant in the Amended Complaint. Therefore, Gallant and Warrior claim that Warrior was not subject to the trial court's judgment because there was no motion filed against Warrior.

Ind. Trial Rule 56 is clear. A party against whom a summary judgment motion is filed has 30 days to respond. *T.R.* 56(C). Here, Gallant and Warrior argue that no summary judgment motion was filed against Warrior. However, a review of the Chronological Case Summary shows that on May 2, 2001, the Baseys filed a Motion for Leave to Amend Complaint seeking to add Warrior as a party. The motion was granted and on June 21, 2002, the Baseys filed their Amended Complaint to add Warrior as a party. Subsequently, on August 2, 2001, the Baseys filed a Motion to Reconsider the Plaintiff's Motion for Partial Summary Judgment filed on October 31, 2000. The caption of the case on this motion included Warrior as one of the defendants.

On August 31, 2001, Gallant and Warrior filed their Answer to the Baseys' Amended Complaint. In their Answer to the Baseys' Amended Complaint, Gallant and Warrior admitted the following:

At the time of the subject accident involving Plaintiff Anna M. Basey on or about November 2, 1997, Warrior Insurance Group, Inc. was organized as a holding company which owned Gallant Insurance Company, a wholly owned subsidiary of Warrior Insurance Group, Inc., and Valor Insurance Company which was owned by Gallant Insurance Company. As of January 1, 2001, Warrior Insurance Group, Inc. was dissolved as a holding company. A new corporation was formed and incorporated in 2001 as Warrior Insurance Group, Inc., an operating company that provides payroll services. The corporation incorporated in 2001, as Warrior Insurance Group, Inc. is a wholly owned subsidiary of J. & P. Holdings, Inc. Also effective January 1, 2001, Gallant Insurance Company became a wholly owned subsidiary of J. & P. Holdings, Inc., with Valor Insurance Company still being owned by Gallant Insurance Company. Reference to Warrior Insurance Group, Inc. hereafter in this Answer refers to Warrior Insurance Group, Inc., that was a holding company at the time of the subject accident involving Plaintiff Anna M. Basey on or about November 2, 1997.

(Appellants' App. p. 862–63). This answer demonstrates that at the time of Anna's accident Warrior was organized as a holding company that owned Gallant. Therefore, Warrior was properly added as a defendant.

Moreover, Gallant and Warrior filed their Response to Plaintiffs' Motion to Reconsider the Plaintiffs' Motion for Partial Summary Judgment on September 5, 2001. The case caption listed the defendants as Steve Malone, Cousins Insurance Agency, Gallant Insurance Company, and Warrior Insurance Group, Inc. In their response, Gallant and Warrior claimed that the Baseys' partial summary judgment motion was filed at a time when Warrior was not a party to this lawsuit. Accordingly, the argument of Gallant and Warrior that the trial court erred in entering judgment against Warrior, as the motion for partial summary judgment sought reconsideration of the prior motion for summary judgment filed against Gallant, is invalid. The record illustrates that Warrior responded within 30 days to the Baseys' Motion to Reconsider the Plaintiffs' Motion for Partial Summary Judgment. *See* T.R. 56(C).

Furthermore, the record reflects that counsel represented both Gallant and Warrior at the hearing on the partial summary judgment motion on October 11, 2001. At the hearing on October 11, 2001, Warrior's counsel stated:

Finally, Your Honor, Warrior Insurance Group [w]as added a[s] a separate defendant after this motion was originally filed and uh ... merely be asking you for reconsideration of the prior motion doesn't give Warrior the ability to effectively present a full response under the Trial Rules, so, if you do reconsider, it can't ... we submit, be applied to Warrior, but on balance ... Here's the ... the uh ... deal here, Your Honor, we think the evidence is undisputed as a matter of law the guy had no actual authority and under the existing law apparent authority does not apply. And the undisputed evidence is that the binding date has to be November 3rd, which is the date after the accident.

You may choose to think, Your Honor, that there [are] fact[ual] disputes on that point, but we don't feel that it could be reasonable at all to stretch the Isaac case to find partial summary judgment

in Plaintiff[s'] favor. For the very simple reason here's why. Our theory is that Mr. Malone didn't even attempt to fax the stuff until November 3rd and the documentary evidence points that out. The only evidence that he attempted to do it on November 1 is his unsupported testimony. If you apply partial summary judgment in their favor, you're taking away the ability for a jury to not believe this guy and not look at the uncontroverted evidence to see that he didn't attempt to do this stuff when he says that he did. And that ... that (inaudiable) result can't happen under any theory that there was apparent authority or actual authority.

(Tr. p. 19–21). Clearly, Warrior had knowledge and notice of the motion for partial summary judgment. Warrior participated, in writing, by filing a response to the Baseys' motion for partial summary judgment with Gallant. *See* T.R. 56(C). Further, Warrior participated by counsel at the hearing on the motion for partial summary judgment.

With the above in mind, we find that Warrior failed to show that it was prejudiced by the trial court's judgment. Thus, it is our determination that the trial court did not err in entering judgment for the Baseys against Warrior (and Gallant) on the issue that the Gallant automobile insurance policy was bound and effective as of November 1, 1997, because Warrior is a bound party.

## CONCLUSION

Based on the foregoing, we conclude that there is evidence to support the trial court's partial summary judgment that Malone, as an agent of Gallant, acted within his scope of apparent authority. Therefore, we affirm the judgment of the trial court because it is sustainable upon a legal theory that is supported by the evidence. *See Neterer*, 548 N.E.2d at 833–34.

Affirmed.

MATTINGLY–MAY, J., and VAIDIK, J., concur.