**T.R. BULGER, INC., Thomas R. Bulger, Royal Developments, Ltd., Rhys G. Mussman and Sally Mussman, Appellants/Cross–Appellees–Plaintiffs,**

v.

**INDIANA INSURANCE COMPANY, Appellee/Cross–Appellant–Defendant.**

No. 46A05–0803–CV–167.

Court of Appeals of Indiana.

Feb. 26, 2009.

Michelle L. Shirk, Mark L. Phillips, Newby, Lewis, Kaminski & Jones, LLP, La Porte, Steven W. Handlon, Portage, IN, Attorneys for Appellants.

Michael D. Sears, Jacquelyn S. Pillar King, Singleton, Crist, Austgen & Sears, LLP, Munster, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Indiana Insurance Co. ("Indiana") filed the underlying declaratory judgment action requesting that the trial court determine whether the insurance policy it sold to T.R. Bulger, Inc. ("Bulger") covers losses sustained by a homeowner as a result of Bulger's faulty installation of a heating, ventilation, and air conditioning ("HVAC") system. The trial court granted summary judgment in favor of Indiana and Bulger appealed. For our review, Bulger raises three issues, which we consolidate and restate as: whether the trial court erred when it granted summary judgment in favor of Indiana. Concluding that no genuine issue of material fact exists with respect to the issue of agency but that a genuine issue of material fact exists that precludes summary judgment with respect to the issue of coverage, we affirm in part, reverse in part, and remand.

### Facts and Procedural History

Rhys and Sally Mussman employed Bulger to install a radiant heat HVAC system during construction of their large home on the shore of Lake Michigan. The installation involved the placement of thousands of feet of copper pipe through which hot or cool water would flow to control the temperature in the house. As the installation neared completion, a dispute arose between the Mussmans and Bulger, and Bulger left the jobsite. Subsequently when the Mussmans had the HVAC system activated, water leaked from the pipes in many areas, the system's air compressor created an abnormally loud noise inside and a noise outside so loud it violated a local noise ordinance. The Mussmans sued Bulger alleging: breach of warranty; breach of contract; negligence; breach of fiduciary duty; and conversion. Bulger counter-sued for unpaid invoices. The case was submitted to arbitration, which resulted in awards of $2,325,000.00 to the Mussmans and $140,000 to Bulger.

Bulger had previously purchased insurance from Indiana Insurance through General Insurance Services, an independent insurance agency. Specifically, Bulger purchased commercial general liability cov-

erage including coverage for products-completed operations hazards [1] and a commercial umbrella liability policy. Pursuant to the insurance policy, Indiana promises:

> to pay those sums that [Bulger] becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. [Indiana has] the right and duty to defend [Bulger] against any "suit" seeking those damages.
>
> \* \* \*
>
> This insurance applies to ... "property damage" only if ... [t]he ... "property damage" is caused by an "occurrence" that takes place in the "coverage territory".

Appellant's Appendix at 1081. The policy defines "property damage" as:

> Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* at 1092. The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 1090.

The policy contains several exclusions from the definition of property damage including the following: 1) Damage to "that particular part of real property on which you ... are performing operations, if the 'property damage' arises out of those operations;" 2) Damage to "that particular part of any property that must be restored, repaired[,] or replaced because 'your work' was incorrectly performed on it," but "this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard;' [2] 3) Damage to " 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard;' " and 4) Damage to " 'impaired property' [3] or property that has not been physically injured, arising out of ... a defect, deficiency, inadequate [sic], or dangerous condition in ... 'your work.' " *Id.* at 1083.

■ On October 19, 2001, Indiana and Bulger sought a declaratory judgment from the trial court determining the existence of coverage for Bulger's losses under the insurance policy. On January 26, 2006, Indiana filed its first motion for sum-

---

1. Although the appendix contains several copies of the insurance policy, none of the copies includes the "Products–Completed Operations Liability Coverage Form." As a result, we must rely upon the definition of "Products-completed operations hazard"—contained in several parts of the policy—in addressing the existence of a genuine issue of material fact. The lack of this document prevents us from fully addressing the merits of the issue of coverage.

2. The policy defines "products-completed operations hazard" as "all ... 'property damage' occurring away from premises you own or rent and arising out of ... 'your work' except ... [p]roducts that are still in your physical possession ... or work that has not been completed or abandoned." Appellant's

App. at 1090. The policy further states that work is considered completed "[w]hen all of the work called for in your contract has been completed[, or w]hen that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project." *Id.*

3. The policy defines "impaired property" as "tangible property, other than ... 'your work', that cannot be used or is less useful because ... it incorporates ... 'your work' that is known or thought to be defective, deficient, inadequate[,] or dangerous ... if such property can be restored to use by ... [t]he repair, replacement, adjustment, or removal of ... 'your work." *Id.* at 1089.

mary judgment which the trial court denied on August 15, 2006. Indiana filed a motion for this court to accept jurisdiction over an interlocutory appeal, which was denied. On January 16, 2008, Indiana filed its second motion for summary judgment. The trial court granted summary judgment in favor of Indiana on February 28, 2008 finding:

> [T]here is no genuine issue of material fact that the faulty workmanship and design of the heating and air conditioning system for the Mussman property was the efficient and predominant cause of the Mussman damages. Consequently, the language of the policies at issue does not provide coverage for Bulger's negligence.
>
> ... [T]here is no genuine issue of material fact that Thomas Cipares, insurance broker for General Insurance, was not the Indiana Insurance Company agent, but the agent of [Bulger].
>
> * * *
>
> [T]he Bulger general insurance policies do not provide coverage to the Mussmans.

*Id.* at 15.[4] Bulger now appeals.[5]

### *Discussion and Decision*

### I. Standard of Review

We review of a motion for summary judgment using the same standard as the trial court—whether the designated evidentiary matter shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Amerisure, Inc. v. Wurster Constr. Co.,* 818 N.E.2d 998, 1001 (Ind.Ct.App.2004). We do not reweigh the evidence; rather, we must accept as true those facts alleged by the nonmoving party, construing the evidence and resolving all doubts in favor of the nonmoving party. *Id.*

### II. Insurance Coverage

The construction of an insurance policy is a question of law for which summary judgment is particularly appropriate. Insurance policies are contracts that are subject to the same rules of construction as are other contracts. When the language of an insurance contract is clear and unambiguous, we will assign to the language its plain and ordinary meaning. An insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability. Thus, we may not extend insurance coverage beyond that provided by the unambiguous language in the contract.

*Id.* at 1001–02.

Bulger purchased a commercial general liability ("CGL") policy from

4. Indiana Appellate Rule 46(A)(10) requires that the Appellant's Brief "include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal." Counsel for Bulger failed to attach a copy of the trial court's order to Bulger's Brief. We remind counsel to comply with the rule in future filings with this court.

5. Indiana cross-appeals the trial court's denial of its first motion for summary judgment. The denial of summary judgment is not a final judgment, but an interlocutory order. *Cardiology Assocs. Of Nw. Ind., P.C. v. Collins,* 804 N.E.2d 151, 154–55 (Ind.Ct.App.2004). Therefore, pursuant to Indiana Appellate Rules 5 and 14, the issue may only be raised in an interlocutory appeal. This court already denied Indiana's motion to accept jurisdiction over the interlocutory appeal of this issue. As a result, we do not address Indiana's claim that the trial court should have granted its first motion for summary judgment. Bulger filed a motion to strike portions of Indiana's reply brief to the cross-appeal. Because we do not address the merits of the cross-appeal, we have disregarded the reply brief. Therefore, Bulger's motion to strike is denied as moot.

Indiana that included coverage for products/operations completed hazards. Bulger's work as a contractor gives rise to two different types of risk: 1) a business risk, and 2) a risk of occurrences that give rise to insurable liability. *See Jim Barna Log Sys. Midwest Inc. v. Gen. Cas. Ins. Co. of Wis.,* 791 N.E.2d 816, 823 (Ind.Ct.App. 2003).

> [A] contractor holds himself out as being capable of completing the bargained-for construction in a workmanlike manner. At the same time, the property owner relies upon that representation and anticipates suitable goods and services. When the contractor's work is faulty, either express or implied warranties are breached, and a dissatisfied customer may recover the cost of repair or replacement of the faulty work from the contractor as the standard measure of damages for breach of warranty.

*Id.* at 823–24. This business risk is born by the contractor and is not insured by a CGL policy. "To hold otherwise would effectively convert the policy into a performance bond or guarantee of contractual performance and result in coverage for the repair and replacement of the insured's own faulty workmanship." *Ind. Insur. Co. v. DeZutti,* 408 N.E.2d 1275, 1279 (Ind. 1980).

On the other hand, the same neglectful craftsmanship, once it is completed, may result in bodily injury or damage to property other than the completed work itself for which the insured may be found liable. *See id.* Commonly, a CGL policy provides coverage for this tort liability for physical damages to others. In the case of a subcontractor on a construction project, any damage to the larger work caused by his product or work would be damage to other property which would be covered by a CGL policy. *Id.* at 1280.

Our supreme court has summed up the distinction between the two risks by stating that a CGL policy "does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." *Id.* at 1279. An illustration helps to clarify this statement:

> When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the [CGL] policy.

*R.N. Thompson & Assocs, Inc. v. Monroe Guar. Insur. Co.,* 686 N.E.2d 160, 162–63 (Ind.Ct.App.1997) (quoting *Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 405 A.2d 788, 791–92 (1979)).

■ The risk intended to be insured by the policy here is "the possibility that the goods, products[,] or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable." *DeZutti,* 408 N.E.2d at 1279 (quoting Roger C. Henderson, "Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know," 50 Neb. L.Rev. 415,441 (1971)). Thus, the policy does not provide coverage to Bulger to the extent that he is required to pay the Mussmans damages for the inspection, repair, or replacement of the HVAC system that he installed or for economic damages related to breach of contract and warranty claims. However, if Bulger's faulty installation of the HVAC

system resulted in damage to the rest of the house or to construction materials that did not belong to Bulger, then the policy may provide coverage.[6]

Indiana argues that the Mussmans' complaint against Bulger does not state a claim for property damage resulting from Bulger's faulty workmanship. We agree that the complaint does not include a specific allegation of property damage. However, counts I–IV each contain the following statement:

> As corrective evaluation and analysis continue, the [Mussmans] may learn of other and additional losses and damages caused by the Defendants' breach of fiduciary duty, and they reserve the right to assert such losses and damages as they are discovered and/or determined.

Appellant's App. at 1055.

The Mussmans and Bulger submitted their claims to arbitration. Presumably, the Mussmans submitted some documentary evidence of their damages to the arbitrator, which may have included damage to property not belonging to Bulger; however, no such documentary evidence is included in the record on appeal. The arbitrator awarded a lump sum award to the Mussmans without breaking down the individual damage categories. Therefore, Bulger did not present any documentary evidence of a claim for property damages that might be covered under the policy.

■ However, Bulger presented the affidavit of Rhys Mussman stating "[w]hen the arbitration award was made . . . one of the components of the claims for damages that I made against [Bulger] was the property damage caused by the leaking pipes that were installed by [Bulger]." *Id.* at

1329. The evidence is supported by the affidavit and deposition testimony of Michael Schwanke, the Mussmans' construction supervisor, stating that when the HVAC system was tested after Bulger had completed his work, Schwanke "observed water leaks from literally hundreds of copper pipe fittings . . . in every room of the house." *Id.* at 1337. Although this evidence may not ultimately prove conclusive of the issue of coverage, it is sufficient to create a genuine issue of material fact as to whether Bulger's faulty workmanship caused damage to the Mussmans' property and whether any such damage was included in the arbitration award. Therefore, Indiana is not entitled to judgment as a matter of law on the issue of coverage.

### III. Agency of Insurance Broker

■ Bulger also argues that the trial court erred when it found "no genuine issue of material fact that Thomas Cipares, insurance broker for General Insurance, was not the Indiana Insurance Company agent, but the agent of T.R. Bulger, Inc. and Thomas Bulger." Appellant's App. at 14. An insurance agent who represents several insurers is a broker. *Westfield Ins. Co. v. Yaste, Zent & Rye Agency,* 806 N.E.2d 25, 29 n. 3 (Ind.Ct.App.2004), *trans. denied.* "An insurance broker who undertakes to procure insurance for another is an agent of the proposed insured." *Malone v. Basey,* 770 N.E.2d 846, 851 (Ind.Ct.App.2002). However, when the broker makes an application for insurance and the policy is issued, the broker acts as "the agent of the insurer and can bind it within the scope of his authority." *Id.*

---

6. Such an occurrence would fall within the products-completed operations hazard coverage. Because the terms of this coverage were not included in the record, we cannot say that such an occurrence would be covered as a matter of law. However, because we construe all doubts in favor of Bulger, the non-moving party, we will assume that coverage exists for the purpose of determining the appropriateness of summary judgment.

The evidence in the record clearly establishes that Bulger understood that Cipares was an insurance broker who represented several insurance companies. In fact, Cipares has procured insurance for Bulger from several different companies over the course of their relationship. The record contains only two out of five pages of Cipares's agency agreement with Indiana. Neither of the pages indicates that Cipares had any actual authority to bind Indiana to terms beyond those in the written policy, nor has Bulger presented any other evidence that Cipares had such actual authority.

However, Cipares may still be able to bind Indiana if he exercised apparent authority.

> Apparent authority is the authority that a third person reasonably believes an agent to possess because of some manifestation from his principal. The necessary manifestation is one made by the principal to a third party, who in turn is instilled with a reasonable belief that another individual is an agent of the principal. It is essential that there be some form of communication, direct or indirect, by the principal which instills a reasonable belief in the mind of the third party. Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship.

*Malone*, 770 N.E.2d at 851–52. Bulger has presented no evidence that he reasonably believed Cipares had the authority to bind Indiana beyond the terms contained in the written policy. Bulger testified in his deposition that Cipares "took competitive bids on the other insurance companies. He's an independent. I understood him to be an independent broker, and he would try to match up the best for us." Appellant's App. at 442. Bulger's testimony indicates that he relied on the advice of Cipares in selecting an insurance policy from among several insurance companies. This evidence supports the trial court's finding that Cipares acted as Bulger's agent until Bulger signed the insurance policy. Only afterwards, did Cipares became Indiana's agent. The evidence does not indicate that Bulger believed Cipares had the power to orally create or modify the terms of the written insurance policies he presented to Bulger. Therefore, no genuine issue of material fact exists with regard to Bulger's claim that Cipares acted as Indiana's agent in procuring the insurance policy, and Indiana is entitled to summary judgment on this issue.

### Conclusion

There is no genuine issue of material fact that Cipares acted as Bulger's agent until Bulger signed the insurance policy. Therefore, the trial court did not err in granting summary judgment in favor of Indiana on this issue. However, there are genuine issues of material fact regarding whether Bulger's faulty workmanship caused property damage to the rest of the Mussmans' house, whether such damage comprised a portion of the arbitration award, and whether such damages are covered by the products-completed operations hazard policy. Therefore, the trial court erred in granting summary judgment in favor of Indiana on this issue.

Affirmed in part, reversed in part, and remanded for further proceedings in light of this opinion.

CRONE, J., and BROWN, J., concur.