## CRUMPACKER *v.* JEFFREY ET AL.

[No. 9,099. Filed February 14, 1917.]

1. APPEAL.—*Review.*—*Evidence.*—*Sufficiency.*—In determining the sufficiency of the evidence to support the verdict, the court on appeal must group that part of it in which there is no conflict with that part of it tending to support the verdict where there is conflict. p. 624.

2. BROKERS.—*Realty Broker.*—*Authority to Find Purchaser.*—*Letter.*—A letter from a landowner to a real estate agent stating, "I

do not care to sell it even at $350, but will let it go at that price in order to clean up things. If you sell it for $350 per acre, I will allow you two and one-half per cent commission," conferred authority merely to find a purchaser for the land at the price specified, and did not authorize the broker to execute a binding contract of sale in the name of the owner, or to specify in detail the terms of sale. p. 629.

3. BROKERS.—*Real Estate Broker.—Ratification of Acts.*—Where a real estate broker; without authority from the landowner, made a contract to sell through letters to prospective purchasers, specifying therein definite terms, and the owner, without knowledge of the letters, verbally expressed his entire satisfaction with the terms as reported by the agent, he thereby ratified the act of the broker in specifying and agreeing to such terms. p. 630.

4. PRINCIPAL AND AGENT.—*Unauthorized Acts of Agent.—Ratification.—Effect.*—Where the principal ratifies his agent's unauthorized act in specifying and agreeing to terms of sale, the situation is the same in legal effect as though the principal personally, rather than the agent, had agreed to such terms. p. 631.

5. FRAUDS, STATUTE OF.—*Oral Agreement for Sale of Lands.—Action for Breach of Contract.*—Where a landowner and prospective purchasers have agreed verbally to terms for the sale of land, an action by such prospective purchasers for damages for the owner's breach of contract is barred by the statute of frauds (§7462 Burns 1914, §4904 R. S. 1881). p. 631.

6. BROKERS.—*Unauthorized Acts.—Ratification.—Knowledge.*— The nature of a ratification of an agent's unauthorized acts by the principal is such that knowledge of the material facts is a necessary element of its existence, and without such knowledge there cannot be an effectual ratification. p. 631.

7. BROKERS.—*Real Estate Broker.—Ratification of Acts.—Burden of Proof.—Action on Contract for Sale of Lands.*—Where, in an action for damages for breach of contract for the sale of lands, plaintiffs relied on a ratification by defendant of the act of his agent in entering into the contract, the burden was on them to prove the fact of ratification, and evidence to that end would not be effective unless it established that defendant had knowledge of the material facts. p. 632.

8. BROKERS.—*Ratification of Unauthorized Act.—Evidence.—Sufficiency.*—In an action for damages for breach of contract for the sale of land, where plaintiffs relied on defendant's ratification of his agent's unauthorized act in executing the contract, embodying specific terms, the evidence is held insufficient to establish a ratification. p. 632.

9. BROKERS.—*Ratification of Unauthorized Act.—Agent's Letter.—Principal's Liability.*—Where a landowner, whose agent had with-

out authority made a contract, by letter, to sell land, knew that the agent had written a letter to the prospecive purchasers, presumably relating to the sale, such owner is not chargeable with knowledge of the contents of the letter, so as to constitute a ratification of the agent's unauthorized act, where it appears that the owner, after being informed by the agent that he had not executed a written contract but had written a letter, asked to see a copy of it but it could not be found and the agent then agreed to obtain a copy and deliver it to the owner, who thereafter did not receive any information respecting the letter's contents until a copy was delivered to him shortly before an action was commenced for a breach of the purported contract, since such facts show that the owner did not wilfully remain ignorant respecting the existence of a written contract, or that he had purposely failed to prosecute an inquiry. p. 633.

10. BROKERS.—*Realty Brokers.—Authority.—Duty of Buyer to Ascertain.*—Where parties negotiate with a real estate broker for the purchase of lands, with knowledge that he is acting as the owner's agent, it is their duty to ascertain the nature and extent of the broker's authority and whether he has been empowered to contract in writing for the sale of the lands. p. 634.

From LaPorte Circuit Court; *James F. Gallaher,* Judge.

Action by Charles L. Jeffrey and another against Edgar D. Crumpacker. From a judgment for plaintiffs, the defendant appeals. *Reversed.*

*Grant Crumpacker, O. L. Crumpacker* and *Osborn, McVey & Osborn,* for appellant.

*Hickey & Wolfe, F. L. Welsheimer* and *Samuel Parker,* for appellees.

CALDWELL, J.—Appellees brought this action against appellant in the Porter Circuit Court to recover damages for the breach of a contract alleged to have been executed between the parties by which appellant sold and agreed to convey to appellees a twenty-acre tract of land situate in Lake county. The cause was venued to the Laporte Circuit Court, where a trial resulted in a verdict against appellant for $4,000, on which judgment was rendered. Error is assigned on the overruling of appellant's motion for a new trial.

The trial involved issues formed on a complaint in two paragraphs, numbered first and third. The negotiations had respecting the purchase and sale of the land were conducted by appellees on their own account and by A. R. Hardesty, as agent representing appellant. Whatever contract was made consisted of correspondence, and involved also a contested element of ratification by appellant. Appellant construes the first paragraph of the complaint as proceeding on the theory that Hardesty, as such agent, and with full power and authority to do so, entered into a written contract with appellees and in appellant's name, by which he sold the land and bound appellant to convey it. The theory of the third paragraph as construed by appellant is that Hardesty as agent exceeded his authority in entering into the contract, but that appellant, with knowledge of the facts, subsequently ratified Hardesty's action. Appellees, however, insist that the two paragraphs of the complaint are alike in theory, that Hardesty exceeded his authority as agent in entering into the contract in writing, but that appellant, with knowledge of all of the material facts, ratified Hardesty's action. As we regard appellees' theory of the complaint as more favorable to appellant than his own construction of it, we shall adopt appellee's theory, and as a consequence we shall give but little attention to the question of Hardesty's authority. As the sufficiency of the complaint is not challenged, we shall not further state its substance, but proceed to consider the sufficiency of the evidence. There was some conflict in the evidence.

1. Grouping that part of it in which there was no conflict with that part of it that tends to support the verdict where there was conflict, as we are required to do in considering its sufficiency, it was, in substance, as follows: In the fall of 1909 Hardesty, a real estate broker, approached appellant on the subject of selling real estate for him. Appellant stated, in substance, that it was likely that he would acquire a tract of land in Lake county, and if

so, it would be for sale. In the spring of 1910, Hardesty again interviewed appellant, and was informed that he had acquired the land involved in this action. He thereupon authorized Hardesty verbally to sell the land at $350 per acre on the ''usual terms''. In June, 1910, appellees offered Hardesty $300 per acre for the land, which proposition Hardesty reported to appellant at Washington, D. C., by letter, appellant at that time being a member of Congress. In response appellant wrote the following letter to Hardesty:

''Washington, D. C. June 11, 1910.

Mr. A. R. Hardesty,
Valparaiso, Ind.
My dear Hardesty:

I have your letter of the 8th inst. about the twenty acre tract of land in Tolleston. I would not sell that land for less than $350 an acre. In my judgment within five years it will be worth a thousand dollars an acre. I do not care to sell it even at $350, but will let it go at that price in order to clean up things. If you sell it at $350 an acre I will allow you two and a half per cent commission.

Sincerely Yours,
E. D. Crumpacker.''

Soon after Hardesty received the above letter there was a telephone conversation between him and appellees, leading to an exchange of letters as follows:

''Valparaiso, Ind. June 23, 1910.

Jeffrey and Morgan,
Chesterton, Ind.
Gentlemen:

This will confirm my telephone conversation of this date, with Mr. Jeffrey, whereby I sell to you (Charles L. Jeffrey and Ed. L. Morgan) for Hon. E. D. Crumpacker of this city, twenty (20) acres of land in Tolleston, now Gary, Ind., and described as follows: E. ½ of the N. W. ¼ of the N. E. ¼ of Sec. 18, Town. 36, N. R. 8, W., in Lake County, Ind. The terms of sale are as follows: The consideration is $350.00 per acre, or $7000.00, the receipt of $100.00 of which is hereby acknowledged as earnest money, and to be applied on the

purchase price, the balance of one third to be paid on delivery of warranty deed and merchantable abstract of title, one third to be paid on or before one year from that date, and one third on or before two years from the same date, deferred payments to bear int. at six per cent per annum, payable annually, and secured by first mortgage on the land, the deed to have the usual release clause.

Very truly,

A. R. Hardesty, Agent."

"Chesterton, Ind., June 23, 1910.

Mr. A. R. Hardesty, Agent for E. D. Crumpacker, Valparaiso, Ind.

Dear sir:

As per conversation with you today over the telephone, I am enclosing you herein Chicago exchange made payable to your order as agent for E. D. Crumpacker for $100.00. This payment is made as earnest money in the purchase from Mr. E. D. Crumpacker by Edward L. Morgan and myself of a twenty acre tract located in section 18, township 36, range 9 west, in the corporate limits of Tolleston, now Gary, Lake County, Indiana.

According to the terms of sale, the price of this twenty acres is three hundred and fifty dollars ($350.00) per acre, one third cash upon Mr. Crumpacker delivering to Mr. Morgan and myself warranty deed and abstract showing merchantable title to the property in question. The remaining two thirds to be payable on or before one and two years time from date of deed, and evidenced by two notes of even date therewith, bearing six per cent interest payable annually and secured by first mortgage on the property. The deed to have the usual release clause contained therein.

As soon as the proper continuation of the abstract has been made, you will deliver the same to us at our office in Gary, Indiana.

Kindly acknowledge receipt of this letter and oblige,

Yours very respectfully,

Charles L. Jeffrey,

CLJ/SA                           Edward L. Morgan."

Enclosed in the letter last set out there was a $100 check drawn by appellees and payable to Hardesty as appellant's agent. Hardesty thereupon wrote and mailed to appellant

a letter, enclosing the $100. check, properly endorsed by him as appellant's agent. This letter was received by appellant in due course, but he made no response to it by letter or otherwise in writing. The letter is as follows:

"Valparaiso, Ind., June 24, 1910.
Hon. E. D. Crumpacker,
Washington, D. C.
Dear sir:
As I informed you yesterday, by telegraph, I sold the 20 acres which you own at Tolleston, Ind., described as the E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of Sec. 18, Town. 36, N., R. 8, W.

The sale was made to Charles L. Jeffrey and Edward L. Morgan of Chesterton, Ind., for $7000.00, check for $100.00 of which is enclosed herewith, the balance of one-third to be paid on delivery of warranty deed and merchantable abstract showing good and sufficient title, one-third to be paid on or before one year from that date, and one-third on or before two years from that date, the deferred payments to bear interest at six per cent payable annually and be secured by first mortgage on the land, the deed to contain the usual release clause.

Now, if you will have the abstract brought down to date at once or send it to me for that purpose or tell me where to find it, so I can have it brought down, we can have the deal closed soon.

Awaiting your reply soon, I am,
Very truly,

A. D. Hardesty."

Appellant returned to his home in Valparaiso early in July. There was evidence that on several occasions thereafter he stated to Hardesty, and on one occasion to appellees, that the terms of the sale were satisfactory to him. There were, however, certain complications in the title involving liens, some of which were disputed by appellant. There was evidence that he proceeded as rapidly as possible, considering other matters that demanded his attention, in an effort to clear the title. The effort, however, was not successful as to a lien claimed by Ward and Gill, but disputed by appellant, amounting to $600. On appellant's part there was evidence that he did not approve of

Hardesty's acts in selling the land, especially considering the specific terms of the sale, and that he did not regard the sale as binding on him, and that he merely held the proposition under advisement, to be accepted or rejected as he should finally determine. In the latter part of July, or early in August, 1910, he asked Hardesty whether he had executed any formal contract for the sale of the land. Hardesty said that he had not, but that he had written a letter. Appellant asked to see a copy, but Hardesty was unable to find it. There was evidence that prior to or about the middle of August, Hardesty, by appellant's direction, notified appellees that appellant did not regard the agreement for the sale of the land as binding on him, and that he would not perform it. In the early part of September there was a meeting in Hardesty's office, at which appellant and appellees were present. There was evidence that at such meeting appellees agreed to take care of the Ward and Gill claim, and appellant stated that the terms were otherwise satisfactory to him. This evidence, however, was contradicted. On July 6, 1910, appellant deposited the $100 check for collection. He testified that he did so as a matter of convenience, intending to apply it as a credit on the selling price of the land, in case he determined to consummate the sale; otherwise that he intended to return the amount to appellees.

On a former occasion Hardesty had acted as broker in the sale of a tract of real estate for appellant. In that transaction the former had asked the latter to execute a contract after a purchaser had been found. The latter replied "I will not sign a contract, but get your buyers ready with the money and we will do business." Hardesty testified that, remembering such transaction, he did not ask appellant to sign a contract in the sale involved here. As we have said, appellant on inquiry was informed the last of July or early in August that Hardesty had not executed a formal contract for the sale of the land, but that he had

written a letter, a copy of which Hardesty was unable to produce. Appellant was not informed respecting the contents of such letter prior to a few days after October 3, and shortly before this action was commenced, when Hardesty procured and delivered a copy to him. The letter of which a copy was so delivered to appellant is the one written by Hardesty to appellees under date of June 23. The first knowledge that appellant had that appellees had written a letter to Hardesty on the subject of the sale and purporting to make or accept a proposition was after the suit was commenced. He then saw and examined the complaint in this action, which set out a copy of appellees' letter of June 23 written to Hardesty. On September 12, appellant sent a draft for $100 by letter to appellees, informing them that the draft was for the purpose of returning the money they had advanced to Hardesty, and that the negotiations for the sale of the land might be considered at an end. On September 13, appellees, by letter, returned the draft with the statement that they would proceed for specific performance or damages. Appellant, by letter dated September 17, acknowledged receipt of the draft and notified appellees that he held it subject to their order. Appellees tendered performance of the contract. There was evidence that the value of the land was greater than $350 per acre.

We proceed to consider the sufficiency of this evidence to sustain the verdict. Under the averments of the complaint, Hardesty's authority in the matter rested 2. upon appellant's letter to him dated June 11, 1910, and above set out, and especially on the following expression contained in it: "I do not care to sell it even at $350, but will let it go at that price in order to clean up things. If you sell it for $350 per acre, I will allow you two and one half per cent commission." Such language addressed to a real estate broker is very generally construed as conferring authority merely to find a purchaser, rather than as authorizing the broker to go further and execute

in the name of the owner a binding contract of sale. The overwhelming weight of authority seems to be to that effect. *Duffy* v. *Hobson* (1870), 40 Cal. 240, 6 Am. Rep. 617; *Armstrong* v. *Lowe* (1888), 76 Cal. 616, 18 Pac. 758; *Tyrrell* v. *O'Connor* (1897), 56 N. J. Eq. 448, 41 Atl. 674; *York* v. *Nash* (1903), 42 Ore. 321, 71 Pac. 59; *Jones* v. *Howard* (1908), 234 Ill. 404, 84 N. E. 1041; *Watkins, etc., Co.* v. *Campbell* (1907), 100 Tex. 542, 101 S. W. 1078; *Thorne* v. *Jung* (1912), 253 Ill. 584, 97 N. E. 1073; *Furst* v. *Tweed* (1895), 93 Iowa 300, 61 N. W. 857; *Simmons* v. *Kramer* (1891), 88 Va. 411, 13 S. E. 902. See, also, notes 17 L. R. A. (N. S.) 210; and *Jasper* v. *Wilson,* 23 L. R. A. (N. S.) 982, where the cases bearing on the point are grouped. The rule established by the weight of authority has been recognized as sound in this jurisdiction. *Campbell* v. *Galloway* (1897), 148 Ind. 440, 447, 47 N. E. 818; *McFarland* v. *Lillard* (1891), 2 Ind. App. 160, 163, 28 N. E. 229, 50 Am. St. 234; *Lockwood* v. *Rose* (1890), 125 Ind. 588, 25 N. E. 710.

We therefore conclude that Hardesty's authority was limited to procuring a purchaser for the land at $350 per acre. It follows that in attempting as appellant's agent to bind him by entering into the written contract constituted of the two letters dated June 23, 1910, Hardesty exceeded his authority in two respects: First, in specifying in detail the terms of sale as expressed in such letters; and, second, in entering into what purported to be a binding contract in writing. We proceed to the question of ratification.

By the letter dated June 24, 1910, written by Hardesty to appellant, the latter was fully informed respecting the specific terms of the sale as embodied in the letters dated June 23, 1910. But he was not thereby informed of the existence of such letters, or that Hardesty and appellees had committed to writing in any form and duly signed the terms of their agreement respecting the sale of the land. There was evidence that on several occasions, after receiving the letter dated June 24, appellant

verbally expressed his entire satisfaction with the specific terms of sale as reported to him by such letter. It would seem, therefore, that in so far as concerns the mere terms of the sale, if such element considered alone has any importance, appellant should be held to have ratified the act of Hardesty as his agent in specifying and agreeing to such terms. If appellant ratified Hardesty's act to the extent we have indicated, then the situation is the same in legal effect as if appellant personally, rather than through an agent, agreed to such terms. As far as we have thus analyzed the case, there is no question of a written contract involved. Assuming then that in legal effect appellees and appellant agreed verbally to terms of sale identical with those reported to appellant by the letter of June 24, the statute of frauds (§7462 Burns 1914, §4904 R. S. 1881), would stand as a barrier to the maintaining of this action by appellees. We therefore proceed to determine whether Hardesty's act of contracting in writing was ratified by appellant.

The facts and circumstances bearing on the subject of ratification in the respect now under consideration are as follows: Appellant was informed specifically respecting the terms of the sale; he expressed himself as satisfied with such terms; he cashed the $100 check, the amount of which was subsequently returned; he took certain steps in the line of clearing the title to the land. If appellant ratified Hardesty's act of contracting in writing for the sale of the land, such ratification was indicated by the foregoing facts and circumstances. The subject-matter of the ratification now under consideration is not the making of a contract, but rather the making of a contract in writing. It is universally held that knowledge of the material facts is essential in order that there may be an effectual ratification. The nature of a ratification is such that knowledge is a necessary element of its existence. It follows that appellant could not be held to

have ratified Hardesty's act in entering into a contract in writing, unless he knew that Hardesty had entered into such a contract. As appellees relied on ratification, it was incumbent on them to prove the fact of ratification. Evidence to that end would not be effective, unless it established also knowledge on the part of appellant, without which there could be no ratification. There was no evidence that appellant knew that Hardesty, by the letters dated June 23, had entered into what purported to be a binding contract for the sale of the land, until long after he had declared both verbally and in writing that all negotiations respecting the sale of the land might be considered as ended. His first information that Hardesty had agreed in writing to the sale of the land was after October 3, 1910, when a copy of Hardesty's letter of June 23 was delivered to him. His first information that appellees had agreed in writing to purchase the land was obtained after this action had been commenced. There was no evidence that appellant, when he cashed the $100 check, had any information that Hardesty had attempted to bind him in writing. His information that a letter had been written was received several weeks later. There was evidence that appellant took steps to clear the title to the land after learning that Hardesty had written a letter, but information merely that a letter had been written was not information that a written contract had been executed. Moreover, the claims against the land were such that appellant might reasonably have been expected to proceed to dispose of them, independent of any purpose to convey the lands to appellees. We do not regard the evidence as sufficient to establish a ratification by the appellant. See the following: *Metzger* v. *Huntington* (1894), 139 Ind. 501, 37 N. E. 1084, 39 N. E. 235; *Strong* v. *Ross* (1904), 33 Ind. App. 586, 597, 71 N. E. 918; *Wheeler* v. *Northwestern Sleigh Co.* (1889), 39 Fed. 347; *Combs* v. *Scott* (1866), 12 Allen (Mass.) 493; *Lightfoot* v. *Horst* (1909), (Tex. Civ.

App.) 122 S. W. 606; *Clement* v. *Young, etc., Co.* (1905), 70 N. J. Eq. 677, 67 Atl. 82, 118 Am. St. 747; 1 Mechem, Agency (2d ed.) §393; *Johnson* v. *Ogren* (1907), 102 Minn. 8, 112 N. W. 894; *Adams' Express Co.* v. *Trego* (1871), 35 Md. 47, 68.

It is argued, however, that since appellant knew about August 1, 1910, that Hardesty had written a letter to appellees, presumably on the subject of the sale of the lands, appellant should be chargeable with knowledge of the contents of such letter. It will be remembered that the facts are as follows: Appellant asked Hardesty whether he had executed a contract for the sale of the land. Hardesty replied that he had not, but that he had written a letter. Appellant then asked to see a copy of the letter, but Hardesty, having searched, was unable to find it, and then agreed to get a copy and deliver it to appellant. Neither Hardesty nor any one else at any time gave appellant any information respecting the contents of such letter. The copy was delivered after October 3, as we have stated. These facts do not indicate that appellant wilfully remained ignorant respecting the existence of a written contract, or that he purposely shut his eyes to means of information. No duty rested on him to ratify the unauthorized acts of his agent, nor was he bound to inquire if there had been such unauthorized acts. He should not be chargeable with knowledge of the contents of such letter, unless he wilfully or purposely failed to prosecute an inquiry.

"Ratification is a voluntary act upon the part of the principal, and he is under no legal obligation to make inquiries about the unauthorized acts of his agent, and knowledge will not be presumed because of the opportunity to acquire it." *Lightfoot* v. *Horst, supra.* "The principal, before a ratification (of unauthorized acts of an agent) becomes effectual against him, must be shown to have had previous knowledge of all the facts and circumstances in the case; and if he assented to or confirmed the act of his agent while

in ignorance of all the circumstances, he can afterwards, when informed thereof, disaffirm it. * * * And the principal's want of such knowledge, even if it arises from his own carelessness in inquiring, or neglect in ascertaining the facts, or from other causes, will render such ratification invalid. His knowledge is an essential element." Story, Agency (9th ed.) §239, note 1. "So if a principal ratify a sale made by his agent without knowledge of a warranty given by the agent, though it would seem clear that the duty of inquiry as to warranty was upon the principal, he is not bound by such ratification." *Brown* v. *Bamberger, etc., Co.* (1895), 110 Ala. 342, 20 South. 114. See, also, *Smith* v. *Tracy* (1867), 36 N. Y. 79.

"Generally speaking it does not devolve upon the principal to make inquiry as to the facts. He has a right to presume that his agent has followed instructions, and has not exceeded his authority. Whenever he is sought to be held liable on the ground of ratification, either express or implied, it must be shown that he ratified upon full knowledge of all material facts, or that he was willfully ignorant; or purposely refrained from seeking information, or that he intended to adopt the unauthorized act at all events, under whatever circumstances." *Oxford Lake Line, etc.* v. *First Nat. Bank* (1898), 40 Fla. 349, 24 South. 480. "It is a well-settled rule that knowledge of the terms and conditions of an unauthorized contract, entered into by an agent, is not to be presumed from the fact that the principal had a reasonable opportunity to acquire such knowledge." *Haswell* v. *Standring* (1911), 152 Iowa 291, 132 N. W. 417, Ann. Cas. 1913B 1326. See, also, *Heinzerling* v. *Agen* (1907), 46 Wash. 390, 90 Pac. 262; 1 Mechem, Agency (2d ed.) §403.

Appellees were fully informed of the existence of the written contract, and that it was made by Hardesty 10. as agent, rather than by appellant personally. It was therefore appellee's duty to ascertain the nature and extent of Hardesty's authority, and whether he had been

empowered to contract in writing for the sale of the lands. Although opportunities were presented to appellees to do so, they made no inquiry of appellant at any time respecting the scope of Hardesty's authority. *Metzger* v. *Huntington, supra; Strong* v. *Ross, supra; Davis* v. *Talbot* (1894), 137 Ind. 235, 36 N. E. 1098; 1 Mechem, Agency (2d ed.) §743. "Whoever, therefore, seeks to procure and rely on a ratification is bound to show that it was made under such circumstances as in law to be binding on the principal, especially to see to it that all material facts were made known to him. The burden of making inquiries and of ascertaining the truth is not cast on him who is under no legal obligation to assume a responsibility, but rests on the party who is endeavoring to obtain a benefit or advantage for himself. This is not only just, but it is practicable. The needful information or knowledge is always within the reach of him who is either party or privy to a transaction which he seeks to have ratified, rather than of him who did not authorize it, and to the details of which he may be a stranger." *Combs* v. *Scott, supra.*

We conclude that the evidence is insufficient to sustain the verdict. Other questions presented are not considered or decided. The judgment is reversed, with instructions to sustain the motion for a new trial.

NOTE.—Reported in 115 N. E. 62. Brokers: real estate, power to make contracts of sale, Ann. Cas. 1917A 522; what constitutes a contract for the sale of land within the statute of frauds, 102 Am. St. 232. See under (2) 19 Cyc 294; 9 C. J. 668; (3) 19 Cyc. 296.; 9 C. J. 532; (4) 19 Cyc 290; 9 C. J. 534; (5) 20 Cyc 226; (6) 19 Cyc 296; (7) 19 Cyc 306; (10) 19 Cyc 294.