QUALITY FOODS, INC., Diversified Properties, Inc., and Midwest Commercial Development, LLC, Appellants–Defendants,

v.

HOLLOWAY ASSOCIATES PROFESSIONAL ENGINEERS AND LAND SURVEYORS, INC., Appellee–Plaintiff.

No. 55A05–0511–CV–669.

Court of Appeals of Indiana.

Aug. 9, 2006.

F. Anthony Paganelli, Sommer Barnard, Indianapolis, IN, Attorney for Appellants.

Dale S. Coffey, Boren Oliver & Coffey, Martinsville, IN, for Attorney Appellee.

## OPINION

SHARPNACK, Judge.

Quality Foods, Inc. ("QFI"), Diversified Properties, Inc. ("DPI"), and Midwest Commercial Development, LLC ("Midwest") (collectively "Appellants") appeal the trial court's judgment for Holloway Associates Professional Engineers and Land Surveyors, Inc. ("Holloway"). Appellants raise two issues, which we restate as:

I.  Whether the trial court's findings of fact and conclusions thereon regarding Delaine Warriner's authority to enter into contracts with Holloway on behalf of QFI and DPI are clearly erroneous; and

II. Whether the trial court's findings of fact and conclusions thereon fore-

closing Holloway's mechanic's lien are clearly erroneous.

We affirm.

The relevant facts follow. Ralph Lee is the president of QFI and DPI, and Bobby Key is the vice-president of QFI and DPI. Lee and Key are members of Midwest. QFI owned undeveloped property near Morgantown in Morgan County commonly referred to as the Morgantown Trails property. DPI held an option to purchase other undeveloped property near Monrovia in Morgan County commonly referred to as the Wooden Farm property. In 2002, QFI and DPI decided to develop the Morgantown Trails property and the Wooden Farm property into residential subdivisions. QFI and DPI engaged Delaine Warriner, a realtor with RE/Max Realty in Indianapolis, to assist with rezoning the properties.

Warriner contacted Holloway concerning a lot layout and wetlands delineation for the Wooden Farm property. Holloway thought that the client was DPI and that Warriner was DPI's representative. Holloway prepared a togographic layout of the lots and located the wetlands on a plat map and billed DPI "C/O Delaine Warriner" $4,779.80. Appellee's Appendix at 2–3. DPI filed an application for a zoning amendment with the Monrovia Plan Commission, which was signed by Ralph Lee and identified Holloway as the "Applicant's Registered Land Surveyor." Appellee's Appendix at 1. The project was eventually abandoned because of wetlands concerns.

Warriner also contacted Holloway to assist with rezoning of the Morgantown Trails property. Holloway was involved with preparing a lot layout and assuring sanitary sewer and water access. Holloway attended several zoning meetings with Warriner, and when they started incurring opposition to the rezoning, Ralph Lee also attended the meetings. At one of those meetings, Holloway and Lee had a discussion regarding their "next step" as a result of the opposition. Transcript at 18. Lee did not object to Holloway's work or indicate that Holloway was not going to be paid. On October 19, 2002, Holloway sent Warriner an invoice for $13,000, and on March 5, 2003, Holloway sent Warriner another invoice for $480.00 for revisions to the plat. The Morgantown Trails property was eventually rezoned for the residential development.

When Holloway's invoices were not paid, Holloway filed a mechanic's lien on the Morgantown Trails property. Following the recording of the mechanic's lien, QFI transferred the Morgantown Trails property to Midwest. Holloway also filed a complaint against Warriner and DPI for the unpaid invoices on the Wooden Farm project and a separate complaint against Warriner, QFI, and Midwest to foreclose the mechanic's lien on the Morgantown Trails property. The two cases were then consolidated. Although Holloway dismissed its claim against Warriner, the Appellants filed a cross claim against her. At a bench trial, Warriner did not appear, and Ralph Lee and Bobby Key testified that they did not authorize Warriner to hire Holloway or incur any engineering expenses with respect to either of the proposed subdivisions.

The trial court entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A) as follows:

\* \* \* \* \*

3. [Holloway] entered into an oral contract with [DPI] through its representative, Delaine Warriner, to perform certain work on property located in Monrovia, Morgan County, Indiana. The value of work performed by [Holloway], as per the evidence in this case, was

Four Thousand Seven [Hundred] Seventy–Nine Dollars and Eighty Cents ($4,779.80).

4. [Holloway] also entered into a contract with [QFI] by its representative, Delaine Warriner, to perform work on property located in Morgantown, Morgan County, Indiana. The evidence shows that work was performed on that particular piece of property, and according to the evidence, the work performed amounted to a value of $14,736.55 as of March 5, 2003.

5. The evidence shows that [Holloway] performed preliminary lay-out and wetland delineation for the Monrovia property and design, preliminary lay-out and rezoning representation for the Morgantown property.

6. The evidence further shows that when [Holloway] was not promptly paid for work it performed on the Morgantown property, it did record a Sworn Statement and Notice of Intention to Hold Mechanic's Lien with the Morgan County Recorder, on March 6, 2003, and the Mechanic's Lien did attach to the real estate at that time.

7. There was evidence presented that Ralph Lee, the President of [QFI] and [DPI] and a member of [Midwest] was present at various zoning meeting[s] concerning rezoning of the property in Morgantown, Indiana, and further, also did sign documentation concerning a rezoning application for the property in Monrovia, Indiana.

8. Upon cross-examination question by Dale S. Coffey [counsel for Holloway], Ralph Lee testified that he considered Delaine Warriner as a partner in her work concerning the Monrovia and Morgantown properties. Particularly, the Court would note that according to the partial transcript of the proceedings held on September 28, 2005, particularly as to Ralph Lee's testimony, Mr. Coffey asked on page 13, line 18 of the partial transcript, "Is it a practice of yours of all of those years of being in business to sign documents without reading them?" Ralph Lee specifically answered on page 13, line 20, "Well … uh … no … uh … I guess in this case I considered Delaine as a partner, and what she drew up and put on paper that it was to both benefits as far as these agreements of … but … uh … ["]

9. Ralph Lee, by his own testimony, saw Delaine Warriner as a partner, and therefore, the Court finds that [QFI] is liable to [Holloway] for the work in which it performed on the property located in Morgantown, Indiana, and further finds that [Holloway] is entitled to interest in the amount of eight percent (8%) from the date the Mechanic's Lien attached to the property until the date of trial, and further, is entitled to the reimbursement of its costs, fees, and expenses in the amount of Three Thousand Dollars ($3,000.00). Therefore, the total owed is Twenty Thousand Seven Hundred Fifty–Nine Dollars and Fifty–Five Cents ($20,759.55).

10. The Court further finds that [QFI] did transfer the property after the lien attached, to [Midwest] and therefore, this judgment shall also be effective as to [Midwest] as per its holding of title to the real estate.

11. The Court further finds that [DPI] is indebted to [Holloway] for work it performed on the Monrovia property, and is indebted in the amount of Four Thousand Seven [Hundred] Seventy–Nine Dollars and Eighty Cents ($4,779.80).

12. The Court further finds that due to Ralph Lee's testimony, and the fact that he considered Delaine Warriner the partner, that the Cross Claim against Delaine Warriner shall fail. Therefore, Delaine Warriner owes nothing to [QFI], [DPI], or [Midwest].

13. The Court finds that [Holloway] is entitled to foreclosure of its Mechanic's Lien, and, should payment on the Mechanic's Lien, plus interest, plus costs and fees, all totaling Twenty Thousand Seven Hundred Fifty–Nine Dollars and Fifty–Five Cents ($20,759.55), not be paid within thirty (30) days, [Holloway] is entitled to foreclose on that particular lien and request that a Sheriff's Sale be conducted for the property in question to satisfy the judgment owed to [Holloway] in this case.

14. Further, [Holloway] is entitled to a judgment and it is ordered to be paid within thirty (30) days as to [DPI] in the amount of Four Thousand Seven [Hundred] Seventy–Nine Dollars and Eighty Cents ($4,779.80).

Appellant's Appendix at 10–12.

The trial court entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000), *reh'g denied*. In our review, we first consider whether the evidence supports the factual findings. *Id.* Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard*, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind.1999).

### I.

█ The first issue is whether the trial court's findings of fact and conclusions thereon regarding Delaine Warriner's authority to enter into a contract with Holloway on behalf of QFI and DPI are clearly erroneous. According to Appellants, Warriner had neither actual nor apparent authority to make commitments on behalf of QFI or DPI.

█ The Indiana Supreme Court has observed the "well recognized general rule, that where one person assumes to act as agent of another, but without authority to do so, he makes himself personally liable as a principal in the transaction." *Gill v. Pollert*, 810 N.E.2d 1050, 1063 (Ind.2004). In determining whether a person is acting as an agent, the court has recognized three classifications of authority: (1) actual authority; (2) apparent authority; and (3) inherent authority. *Gallant Ins. Co. v. Isaac*, 751 N.E.2d 672, 675 (Ind.2001). Actual authority is created "by written or spoken words or other conduct of the principal which, reasonably interpreted, causes

the agent to believe that the principal desires him so to act on the principal's account." *Id.* Apparent authority "refers to a third party's reasonable belief that the principal has authorized the acts of its agent; it arises from the principal's indirect or direct manifestations to a third party and not from the representations or acts of the agent." *Id.* Inherent authority, "which is grounded in neither the principal's conduct toward the agent nor the principal's representation to a third party[ ] but rather in the very status of the agent[,] ... originates from the customary authority of a person in the particular type of agency relationship." *Id.* "[T]he acts of an agent with inherent authority only bind the principal where (1) the acts done are those which usually accompany or are incidental to transactions which the agent is authorized to conduct if, although they are forbidden by the principal, (2) the other party reasonably believes that the agent is authorized to do them, and (3) the other party has no notice that he is not so authorized." *Id.* at 676 n. 1.

�In▌ We begin here by focusing upon apparent authority. "Apparent authority is the authority that a third person reasonably believes an agent to possess because of some manifestation from his principal." *Id.* at 676. "The necessary manifestation is one made by the principal to a third party, who in turn is instilled with a reasonable belief that another individual is an agent of the principal." *Id.* "It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party." *Id.* at 676–677. "Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship." *Id.* at 677. The manifestations "need not be in the form of direct communications, 'but rather the placing of the agent in a position to per-

form acts or make representations which appear reasonable to a third person is a sufficient manifestation to endow the agent with apparent authority.'" *Id.* (quoting *Herald Telephone v. Fatouros,* 431 N.E.2d 171, 175 (Ind.Ct.App.1982)). "[S]uch a manifestation by the principal may be found ... where the principal clothes or allows a special agent to act with the appearance of possessing more authority than is actually conferred." *Id.* (quoting *Storm v. Marsischke,* 159 Ind.App. 136, 138, 304 N.E.2d 840, 842–43 (1973)).

Here, Ralph Lee testified that he did not authorize Warriner to hire Holloway or incur any engineering expenses with respect to either of the proposed subdivisions. However, Lee signed a zoning amendment application for the Wooden Farm property on behalf of DPI, which identified Holloway as the "Applicant's Registered Land Surveyor." Appellee's Appendix at 1. Lee also attended zoning meetings with Holloway and Warriner for the Morgantown Trails property. Lee did not object to Holloway's work or indicate that Holloway was not going to be paid. Lee also indicated in his testimony that he did not read documents presented to him by Warriner because he considered Warriner a "partner" and "what she drew up and put on paper that it was to both benefits as far as these agreements...." Transcript at 81.

Bobby Key, the vice-president of DPI and QFI, also testified that he did not authorize Warriner to hire Holloway. However, Bobby Key admitted that he typically hires an architect to prepare a preliminary site plan and do the necessary paperwork for zoning changes. In fact when questioned whether there was "any reason why you wouldn't want to hire an engineer and incur those costs before you got preliminary [zoning] approval," Key responded, "You may never get to develop

it." Transcript at 97. Key also testified that when Ralph Lee and Warriner talked to him about developing Morgantown Trails, he told Warriner to talk to his architect.

Holloway testified that Warriner contacted him regarding the Wooden Farm and Morgantown Trails properties. All of his correspondence was with Warriner, and other than the rezoning meetings, he did not meet with any representative of DPI or QFI. Holloway did not discuss any financial terms of his work with Ralph Lee. However, Holloway thought that Warriner was DPI and QFI's agent.

The trial court found that Warriner was DPI's agent regarding the Wooden Farm property and QFI's agent regarding the Morgantown Trails property. Appellant's Appendix at 10 (Findings No. 3 & 4). The trial court also found that Ralph Lee considered Warriner a "partner." *Id.* at 11 (Findings No. 8 & 9). Appellants argue that the trial court was clearly erroneous because neither DPI nor QFI directly or indirectly communicated to Holloway that Warriner was their agent. However, Appellants have the burden of showing that the record contains no facts, either directly or by inference, to support the trial court's findings. We cannot say that the record is devoid of facts in support of the trial court's finding that Warriner was an agent for DPI or QFI.

While DPI and QFI did not directly inform Holloway that Warriner was their agent, they placed her in a position to perform acts and make representations to instill a reasonable belief in Holloway that she was their agent. Ralph Lee signed documents identifying Holloway as DPI's engineer, attended rezoning meetings with Holloway for the Morgantown Trails property, and did nothing to dispel the notion that Warriner was an agent for DPI and QFI. In fact, during his testimony, Lee

indicated that he considered Warriner his "partner." Transcript at 81. We conclude that there is evidence to support the trial court's findings, and the trial court's findings are not clearly erroneous. *See, e.g., Zimmerman v. McColley,* 826 N.E.2d 71, 79–80 (Ind.Ct.App.2005) (holding that the insurance company's employee had apparent authority to bind the insurance company to a settlement).

We also note that "where a trial court has made special findings pursuant to a party's request under Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings." *Mitchell v. Mitchell,* 695 N.E.2d 920, 923–924 (Ind.1998). The circumstances here also bring to mind the theory of law that "[a] principal will be bound by a contract entered into by the principal's agent on his behalf regardless of the agent's lack of authority if the principal subsequently ratifies the contract as one to which he is bound." *Heritage Development of Indiana, Inc. v. Opportunity Options, Inc.,* 773 N.E.2d 881, 889 (Ind.Ct.App.2002), *reh'g denied, trans. dismissed; Blairex Laboratories, Inc. v. Clobes,* 599 N.E.2d 233, 236 (Ind.Ct.App.1992) ("When a principal, with full knowledge of the facts, appropriates the fruits of an agent's unauthorized act, the principal may not complain later the agent acted without authority."), *trans. denied.* We have explained ratification as:

Ratification means the adoption of that which was done for and in the name of another without authority. It is in the nature of a cure for [lack of] authorization. When ratification takes place, the act stands as an authorized one, and makes the whole act, transaction, or contract good from the beginning. Ratification is a question of fact, and ordinarily may be inferred from the conduct of the parties. The acts, words, silence, deal-

ings, and knowledge of the principal, as well as many other facts and circumstances, may be shown as evidence tending to warrant the inference or finding of the ultimate fact of ratification. . . . Knowingly accepting benefits of an unauthorized employment amounts to a ratification of such contract of employment, and is in the nature of an estoppel to deny the authority to make such contract. Ratification by a corporation may be shown by conduct, without any formal action of its board of directors. Corporations act only by and through their officers and agents, and ratification may be inferred from affirmation, or from passive acquiescence or from the receipt of benefits with knowledge. Knowledge, like other facts, need not be proved by any particular kind or class of evidence, and may be inferred from facts and circumstances. . . .

*Heritage Development,* 773 N.E.2d at 889–890 (quoting *State ex rel. Guaranty Building & Loan Co. v. Wiley,* 100 Ind.App. 438, 196 N.E. 153, 154 (1935)). Even if Warriner did not have apparent authority, DPI and QFI were aware that Holloway was performing work for the rezoning of the Morgantown Trails and Wooden Farm properties and accepted the benefits of the work. *See, e.g., id.* (holding that even if Carter was not authorized to enter into the purchase agreement, the nonsigning owners subsequently ratified the contract).

## II.

The next issue is whether the trial court's findings of fact and conclusions thereon foreclosing Holloway's mechanic's lien are clearly erroneous. Ind.Code § 32–28–11–1 provides: "Registered professional engineers, registered land surveyors, and registered architects may secure and enforce the same lien that is now given to contractors, subcontractors, mechanics, journeymen, laborers, and materi-

almen under IC 32–28–3 and any statutes that supplement IC 32–28–3." Further, "[a] lien created under this chapter may be secured and enforced in the same manner as mechanic's liens are secured and enforced." Ind.Code § 32–28–11–2.

In discussing mechanic's liens, the Indiana Supreme Court has held:

A contractor may attach a mechanic's lien to real estate in order to recover his wages and costs. Ind.Code § 32–28–3–1 et seq. Before this lien may attach, however, "it is necessary that such materials should be furnished or labor performed by the authority and direction of the owner, and something more than mere inactive consent on the part of such owner is necessary in order that such lien may be acquired against him." *Woods v. Deckelbaum,* 244 Ind. 260, 264, 191 N.E.2d 101, 102 (1963) (quoting *Courtney v. Luce,* 101 Ind.App. 622, 626, 200 N.E. 501, 503 (1936)) (emphasis added). "The consent must be more than inactive or passive consent, and the lien claimant's burden to prove active consent is especially important when the improvements are requested by someone other than the landowner." *Cho v. Purdue Research Found.,* 803 N.E.2d 1161, 1168 (Ind.Ct.App.2004); *Stern & Son, Inc., v. Gary Joint Venture,* 530 N.E.2d 306, 308 (Ind.Ct.App.1988). Additionally, a court may consider "how closely the improvements in question resemble a directly bargained-for benefit." *Stern,* 530 N.E.2d at 309.

*Gill,* 810 N.E.2d at 1058–1059. The court also observed:

The exact nature and content of the owner's active consent in this context will vary from case to case; however, case law makes clear that the focus is not only on the degree of the owner's active participation in the decisions and the actual construction. Instead, the fo-

cus is also on how closely the improvements in question resemble a directly bargained-for-benefit.

*Id.* at 1059 (quoting *Stern,* 530 N.E.2d at 309).

Appellants concede that if Warriner was QFI's agent and entered into a contract with Holloway, "such a contract would offer prima facie evidence that QFI consented to the improvements at issue." Appellant's Brief at 16–17. However, according to Appellants, Warriner was not QFI's agent and QFI's "mere inactive consent" is insufficient. *Id.* at 17. Having found that Warriner had apparent authority to enter into a contract with Holloway on behalf of QFI, we conclude that the trial court's findings enforcing Holloway's mechanic's lien are not clearly erroneous. *See, e.g., Mann v. Schnarr,* 228 Ind. 654, 669, 95 N.E.2d 138, 144 (Ind.1950) ("The husband may be the agent for the wife in making an authorized contract, or she may by her acts ratify an unauthorized contract. Or if the wife knows the improvement is being made on the real estate and makes no objection to those furnishing the labor and materials, and does any affirmative act consistent with her consent to the improvement, she consents to the creation of the lien and her interest in the real estate is subject to the lien ...."); *cf. Gill,* 810 N.E.2d at 1059–1061 (holding that the insurance agent was not the property owners' agent for purposes of hiring a demolition contractor).

For the foregoing reasons, we affirm the trial court's judgment for Holloway.

Affirmed.

NAJAM, J., and ROBB, J., concur.