**MAXITROL COMPANY, Appellant–Defendant,**

v.

**LUPKE RICE INSURANCE AGENCY, INC. d/b/a/ Lupke Rice Associates, Appellee–Plaintiff.**

**No. 02A03–0905–CV–216.**

Court of Appeals of Indiana.

March 26, 2010.

Michael G. Latiff, Butzel Long, Detroit, MI, Attorneys for Appellant.

Karen T. Moses, Shannon K. Reed, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Senior Judge.

Maxitrol Company (Maxitrol) appeals the trial court's judgment in favor of Lupke Rice Insurance Company, Inc. (Lupke Rice) following a bench trial. We reverse.

The following issues are dispositive:

1. Whether the trial court erred in concluding that Maxitrol was bound by Lupke Rice's acts even though Lupke Rice violated Maxitrol's private instructions not to pay RSA the adjusted premiums.

2. Whether the trial court erred in concluding that Maxitrol ratified Lupke Rice's adjusted premium payments to RSA.

Maxitrol is a Michigan corporation that manufactures gas pressure regulators. Lupke Rice is an Indiana insurance agency, and Stanley Rice (Rice) is one of its agents. Rice procured Maxitrol's workers' compensation insurance from EBI Compa-

nies until early 2002 when EBI was sold to Royal Sun Alliance (RSA). Thereafter, Maxitrol's workers' compensation insurance was procured from RSA.

Lupke Rice and Maxitrol agreed to an agency billing relationship. Lupke Rice paid the premiums and in turn invoiced and recovered payment from Maxitrol. For the workers' compensation insurance, Maxitrol paid an estimated premium at the start of each twelve-month policy period. The estimated premium was based in part on the job classifications and payroll amounts for Maxitrol's employees. As is the industry standard, the full policy premium was not determined until the end of each policy period when Maxitrol's full exposure was capable of determination. Accordingly, at the expiration of each policy period, the insurer audited Maxitrol and either credited Maxitrol with an overpayment or billed for an adjustment.

In 2000, EBI audited Maxitrol at the expiration of the June 30, 1999, to June 30, 2000, policy period. EBI determined that Maxitrol had improperly classified some of its employees and owed an additional premium of $11,062. Lupke Rice paid the premium and then told Maxitrol about the audit report. Chris Kelly, Maxitrol's Vice President of Finance, immediately contacted Rice to challenge the adjustment to the premium. Rice told Kelly not to pay the adjustment and that he (Rice) would "take care of it." Tr. at 67. Per Rice's instructions, Maxitrol paid the regular premium, but not the adjustment. Maxitrol was not aware that Lupke Rice had paid the premium adjustment.

At the end of the 2002 policy period, RSA audited Maxitrol and determined that Maxitrol owed RSA an additional $8,761. Lupke Rice paid RSA the adjusted amount due and advised Kelly of the adjustment. Kelly told Rice he was still upset with the auditor's classifications. Rice again told

Kelly not to worry about the adjusted premiums and that he (Rice) would "take care of it." Tr. at 243. During the 2003 audit, RSA determined that Maxitrol owed an adjusted premium of $24,078. Lupke Rice paid the additional $24,078 that was due on the policy, and told Maxitrol about the adjustment. Maxitrol again objected to the auditor's classifications. During the 2004 audit, RSA determined that Maxitrol owed an adjusted premium of $17,720. Lupke Rice paid the adjustment, and Kelly objected to the auditor's classifications.

During this time, Lupke Rice sent Kelly invoices and statements. The invoices were a request for payment. The statements, on the other hand, were a report of credits and balances over a series of years. Maxitrol never received an invoice for the audit adjustments. The adjustment amounts did, however, appear on the statements. Kelly contacted Rice several times to inquire as to why the adjusted amounts were still on the statements. Rice told Kelly the statements were an internal accounting document and "not to worry about it. He would take care of it." Tr. at 313. Kelly was not aware that Lupke Rice had paid the adjusted premiums. Tr. at 252.

Maxitrol terminated its workers' compensation insurance with Lupke Rice in February 2004. In May 2005, Rice contacted Kelly and for the first time told him that Lupke Rice had paid the adjusted premiums and that Maxitrol needed to pay Lupke Rice because Rice would "be in a lot of trouble if he didn't get this resolved." Tr. at 252. Trial Court Finding # 52. Kelly responded in writing to Rice on June 6, 2005. That letter provides in relevant part as follows: "[W]hile your office may have paid these increases, you did so without our knowledge, consent and/or agreement to repay you for them. In our discussions we had stated that we needed to

have our concerns addressed regarding the audits." Defendant's Exhibit G.

When Maxitrol and Lupke Rice failed to reach a resolution, in May 2006, Lupke Rice filed a complaint seeking recovery of insurance premiums it had paid on behalf of Maxitrol. In addition to the $61,621 due in workers' compensation premium adjustments, Lupke Rice sought an additional $2,246.59 for other unspecified premiums, for a total recovery of $63,867.59. Both parties filed summary judgment motions, which the trial court denied in August 2008.

Following a January 2009 bench trial, the trial court entered findings of fact and conclusions of law in a judgment in favor of Lupke Rice. Specifically, the court found in relevant part that Maxitrol was bound by Lupke Rice's acts, even though Lupke Rice violated Maxitrol's private instructions, and that Maxitrol ratified Lupke Rice's payment of the adjusted premiums to RSA. In the judgment, the court ordered Maxitrol to pay Lupke Rice $61,621.00, post-judgment interest and costs. The court denied Lupke Rice's request for prejudgment interest. Maxitrol appeals.

### Standard of Review

At Lupke Rice's request, the trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. The standard of review is therefore two-tiered. *Infinity Products, Inc. v. Quandt,* 810 N.E.2d 1028, 1031 (Ind.2004). We first determine whether the evidence supports the trial court's findings, and we next determine whether the findings support the judgment. *Id.* Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them. *Id.* The trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions which rely upon those findings.

*Id.* In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id.*

### Maxitrol's Instructions Not to Pay the Adjusted Premiums

■ Maxitrol argues that the trial court "erred in its application of agency law." Appellant's Br. at 9. Specifically, Maxitrol contends that it is not liable for the adjusted premiums because agent Lupke Rice disregarded principal Maxitrol's instructions not to pay the adjusted premiums.

■ The Indiana Supreme Court has explained that a "principal is bound by the acts of a general agent if the agent acted within the usual and ordinary scope of the business in which it was employed, even if the agent may have violated the private instructions the principal may have given it." *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1304 (Ind.1998). This rule is intended to hold a principal liable to a third party. *See Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484, 488 (Ind.2003). The reason for this rule is that if one of two innocent parties—either the principal or the third party—must suffer due to a betrayal of the agent's trust, the loss should fall on the party who is most at fault. *Koval*, 693 N.E.2d at 1304. Because the principal puts the agent in a position of trust, the principal should bear the loss. *Id.* The agent remains liable to the principal in accordance with the terms of their agreement. *Id.*

Here, the trial court recognized that the facts of this case differ from the facts of the cases where this legal rule has been applied. Specifically, the trial court noted that pursuant to those cases, the legal rule would hold principal Maxitrol liable to third party RSA if agent Lupke Rice had advised RSA that Maxitrol did not dispute the audited premiums. Despite the factual differences in the cases, the trial court found the legal rule was instructive and applied it to the facts of this case as well, ordering principal Maxitrol to reimburse agent Lupke Rice for payments that it made to third-party RSA. However, the rationale behind the rule simply does not apply in this case. Here, we have a disobedient agent seeking reimbursement rather than an innocent third party seeking to enforce an agent's representations.

■ Further, where a principal has instructed an agent not to do something, and the agent disobeys the principal, the agent is clearly more at fault than the principal. The rule was not intended to protect a disobedient agent. The trial court therefore erred in concluding that Maxitrol was bound by Lupke Rice's acts even though Lupke Rice violated Maxitrol's private instructions not to pay RSA the adjusted premiums.

### Ratification

■ Maxitrol also argues that the trial court erred in concluding that it ratified Lupke Rice's payments to RSA. Ratification is the adoption of that which was done for and in the name of another without authority. *Quality Foods, Inc. v. Holloway Associates Professional Engineers and Land Surveyors*, 852 N.E.2d 27, 33 (Ind.Ct.App.2006). It is in the nature of a cure for a lack of authorization. *Id.* When ratification takes place, the transaction stands as an authorized one, and the transaction is good from the beginning. *Id.* Ratification is a question of fact, and may be inferred from the conduct of the parties. *Id.* The acts, words, silence, dealings, and knowledge of the principal, as well as many other facts and circumstances, may be shown as evidence warranting the inference of finding of the ultimate fact of

ratification. *Id.* at 33–34. Knowingly accepting the benefits of an unauthorized transaction amounts to ratification of such transaction and is in the nature of an estoppel to deny the authority to make such a transaction. *Id.*

A principal has the right to presume that his agent has followed instructions and has not exceeded his authority. *Crumpacker v. Jeffrey,* 115 N.E. 62, 67, 63 Ind.App. 621 (1917). Whenever a principal is sought to be held liable on the ground of ratification, either express or implied, it must be shown that the principal ratified upon full knowledge of all material facts, or that he was willfully ignorant, or purposely refrained from seeking information. *Id.*

Here, however, Maxitrol did not have full knowledge of all material facts. Specifically, Maxitrol did not know that Lupke Rice was paying RSA the annual premium adjustments. Maxitrol did not learn of these payments until May 2005, more than one year after Lupke made the last of these payments. Under these circumstances, the trial court erred in concluding that Maxitrol ratified Lupke Rice's payment to RSA.

Reversed.[1]

BAKER, C.J., and VAIDIK, J., concur.

---

1. Lupke Rice raises the following two issues on cross-appeal: whether the trial court erred in failing to award it prejudgment interest and whether it is entitled to appellate attorney fees. Because we reverse the trial court, we need not address these issues.