**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**





ATTORNEY FOR APPELLANTS:

**JOHN R. HELM**
Schreckengast & Helm
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DANIEL J. VANDERPOOL**
Vanderpool Law Firm, PC
Warsaw, Indiana


# IN THE COURT OF APPEALS OF INDIANA

HENRY (HANK) EILTS, HANK'S CONSTRUCTION, and THE G. JACKIE EILTS CREDIT SHELTER TRUST,

Appellants-Defendants,

vs.

JEREMY WAYMAN,

Appellee-Plaintiff.

No. 85A02-1208-PL-627

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Michael D. Rush, Special Judge
Cause No. 85C01-1009-PL-517

**May 24, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHEPARD, Senior Judge**

Jeremy Wayman hired Henry Eilts's excavating company, Hank's Construction, Inc., to deal with a recurring drainage problem at his home. He says Eilts agreed to grant Wayman an easement on a farm as part of the project. Eilts, who co-owns the farm with a family trust, denied that he made the promise and says he could not do so without the trust's authorization. The trial court found in favor of Wayman. Eilts, his company, and the trust now appeal. We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts favorable to the trial court's judgment revealed that Wayman's home in Wabash, Indiana, had drainage problems. A clay pipe drained water from his home's downspouts and his geothermal heating and cooling system. The pipe ran under a neighbor's property and sometimes clogged due to tree roots on his neighbor's land. When the pipe clogged, water would infiltrate the crawlspace under Wayman's home and cause the liner of his swimming pool to rise out of the ground. Wayman's neighbor said she would not agree to any more excavations on her property after previous repair work on the pipe had torn up her lawn.

In fall 2007, Wayman asked Eilts, who had cleaned out the drainage pipe several times in the past, for a more permanent solution. Eilts told Wayman he owned a neighboring farm and proposed to run a new drainage tile from Wayman's property onto the farm. Actually, Eilts co-owned the farm with the G. Jackie Eilts Credit Shelter Trust, though he never mentioned the Trust's ownership interest at any point in their discussions. Named for Eilts's wife, the Trust governed her property interests after her

death. Eilts's two daughters, Tamra Helm and Karen Walters, were the trustees. They both worked for their father at Hank's Construction.

Wayman and Eilts agreed on a price of $3500, for which Hank's would install the drainage tile and Eilts would give Wayman a permanent easement to use and maintain the tile. They did not put their agreement in writing. Eilts installed the tile in fall 2007 and came back the following spring to reseed the excavation site. Wayman paid Hank's $3000 in several installments during the winter of 2007-2008 but withheld payment of the final $500 pending Eilts's execution of the easement.

In the meantime, Wayman built a new restaurant in Wabash. Eilts repeatedly asked Wayman to hire him to do excavating and drainage work for the restaurant site, but Wayman's general contractor did not hire Hank's for the job. In 2009, Wayman called Hank's to ask about the easement, and one of Eilts's daughters, Walters, said she would look into it. Wayman called again six to eight weeks later, and Walters said, "[W]ell you know Jeremy, [D]ad's still really mad about the [restaurant] job." Tr. p. 35. Eilts subsequently told Wayman that he had never agreed to issue an easement and threatened to close off Wayman's access to the drainage tile.

Wayman sued Eilts and Hank's Construction, alleging breach of contract and promissory estoppel, and added the Trust as a defendant after learning of the Trust's interest in the farm. Eilts and Hank's counterclaimed for the unpaid $500. After a bench trial, the court sua sponte issued findings of fact and conclusions of law in favor of

Wayman on the subject of the easement and directed Wayman to pay Hank's the remaining $500 after the easement was issued. This appeal followed.

## ISSUES

Eilts, Hank's, and the Trust's claims on appeal are as follows:

I. Whether the trial court erred in determining that Eilts agreed to grant Wayman an easement.

II. Whether the court erred in determining that Eilts had apparent authority to bind the Trust to agree to issue an easement to Wayman.

III. Whether the court erred in conditioning Eilts and Hank's receipt of money owed to them by Wayman upon execution of the easement.

## DISCUSSION AND DECISION

The trial court's sua sponte findings of fact control only the issues they cover. *Barkwill v. Cornelia H. Barkwill Revocable Trust*, 902 N.E.2d 836, 839 (Ind. Ct. App. 2009), *trans. denied*. We consider whether the evidence supports the findings, and whether the findings support the judgment. *Id.* Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. *Id.* We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. *Id.* We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions. *Trust No. 6011, Lake Cnty. Trust Co. v. Heil's Haven Condo. Homeowners Ass'n*, 967 N.E.2d 6, 14 (Ind. Ct. App. 2012), *trans. denied*.

## I. DID EILTS PROMISE TO GRANT AN EASEMENT?

Eilts says he never agreed to grant Wayman an easement on the farm property and, at most, granted him a revocable license to use the drainage tile. This statement is merely a request to reweigh the evidence. Wayman testified that Eilts promised to grant him an easement, and the trial court found this was true as a matter of fact.

Next, Eilts and the Trust argue that the parties' agreement regarding the easement was invalid because it was not in writing. As a general rule, a person may not bring an action involving a contract for the sale of land unless the promise, contract, or agreement upon which the action is based is in writing and signed by the party against whom the action is brought. Ind. Code § 32-21-1-1(b)(4) (2002). An agreement for an easement has long been held subject to the written agreement requirement. *See Robinson v. Thraikill*, 110 Ind. 117, 10 N.E. 647, 647 (1887) ("[A]n easement is an interest in land, and . . . a contract creating such an interest is within the statute of frauds.").

Still, an unwritten agreement that purports to create an easement is not void, but merely voidable. *Dubois Cnty. Mach. Co. v. Blessinger*, 149 Ind. App. 594, 274 N.E.2d 279, 282 (1971). Such an agreement may be enforceable in court under the doctrine of partial performance. *Id.* "To qualify as a part performance of the oral contract certain circumstances must be present and these circumstances must be founded on, and referable to, the oral agreement." *Marathon Oil Co. v. Collins*, 744 N.E.2d 474, 478 (Ind. Ct. App. 2001) (quoting *Perkins v. Owens*, 721 N.E.2d 289, 292 (Ind. Ct. App. 1999)). "Circumstances generally held sufficient to invoke the doctrine of part performance as an

exception to the statute of frauds are some combination of the following: payment of the purchase price or a part thereof; possession; and lasting and valuable improvements on the land." *Id.* (quoting *Perkins*, 721 N.E.2d at 292).

Here, Wayman paid Hank's most of the agreed-upon price. Furthermore, Eilts and Hank's made lasting and valuable improvements on the farm and on Wayman's property in the form of the drainage tile. Finally, Wayman made use of the drainage tile once it was hooked up. In fact, if Eilts had carried out his threat to close off Wayman's access to the drainage tile, Wayman would have suffered flooding in his house's crawlspace and damage to his pool. Under these circumstances, we conclude that the trial court was warranted in finding that Eilts's promise to issue an easement was enforceable under the doctrine of partial performance, despite not being in writing.

## II. COULD EILTS BIND THE TRUST?

Eilts and the Trust claim that any promise to grant an easement was invalid because Eilts is merely a part-owner of the farm through which the drainage tile runs and lacked authority to bind the Trust. The trial court determined that the Trust was subject to the agreement Wayman and Eilts made, under the doctrine of apparent authority.

Based in agency law, the doctrine of apparent authority is most often associated with contracts and the ability of an agent with "apparent authority" to bind the principal to a contract with a third party. *Columbus Reg'l Hosp. v. Amburgey*, 976 N.E.2d 709, 714 (Ind. Ct. App. 2012), *trans. denied*. Apparent authority refers to a third party's reasonable belief that the principal has authorized the acts of its agent. *Quality Foods*,

*Inc. v. Holloway Assocs. Prof'l Eng'rs & Land Surveyors, Inc.*, 852 N.E.2d 27, 32 (Ind. Ct. App. 2006). It arises from the principal's indirect or direct manifestations to a third party and not from the representations or acts of the agent. *Id.* Placing an agent in a position to perform acts or make representations which appear reasonable to a third person is a sufficient manifestation to endow the agent with apparent authority. *Herald Tel. v. Fatouros*, 431 N.E.2d 171, 175 (Ind. Ct. App. 1982).

Eilts and his daughters, as trustees of the Trust, did not have an agreement as to who would be permitted to "burden a property with an easement." Tr. p. 100. During discussions with Wayman, Eilts always referred to the farm as "his field. His land." *Id.* at 26. Eilts's daughters, both of whom were also his employees, allowed Eilts to make rental arrangements with the person who leased the farm. Eilts did not put his rental arrangements in writing.

In addition, trustee Helm managed Hank's finances, and she saw Eilts working on Wayman's drain. Walter, the other trustee, issued a bill to Wayman in November 2000 after the excavation and installation of the drainage tile was done. Neither of them questioned Eilts's decisions about the project. To the contrary, when Wayman called in 2009 to ask about the status of the easement, Walter said, "[W]ell you know Jeremy, [D]ad's still really mad about the [restaurant] job." *Id.* at 35. She did not indicate that her father lacked the authority from the Trust to grant Wayman an easement. Taken together, there is sufficient evidence that the Trust put Eilts in a position to make representations about the farm that would appear reasonable to third persons such as

Wayman. The trial court's findings and conclusions as to apparent authority are not clearly erroneous.[1]

## III. DID THE TRIAL COURT ERR WITH RESPECT TO THE COUNTERCLAIM?

Eilts and Hank's say that the court should not have conditioned Wayman's payment of the $500 owed to Hank's upon the execution of the easement. Having concluded that the court correctly determined that execution of the easement was an element of the parties' agreement, we find no error in the court's condition for payment.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

BAILEY, J., and BROWN, J., concur.

[1] The trial court also determined that the Trust was subject to Wayman and Eilts's agreement because it ratified the deal. In light of our conclusion about apparent authority, we need not reach this issue.