**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID W. STONE, IV**
Stone Law Office & Legal Research
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LETITIA KURABARA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1402-SC-83 |
| | ) | |
| CREATIVE REAL ESTATE PROPERTY | ) | |
| MANAGEMENT, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
The Honorable Stephen Clase, Magistrate
Cause No. 48C04-1212-SC-6039

**October 30, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Letitia Kurabara[1] appeals the small claims court's judgment and award of damages in favor of Creative Real Estate Property Management ("CRE"). We affirm in part, reverse in part, and remand.

## Issues

Kurabara raises two issues, which we restate as:

I.  whether there was evidence of an agency relationship between Kurabara and Gracie Suko; and

II.  whether the award of damages is supported by the evidence.

## Facts

Kurabara lives in Canada but owns a house in Anderson. The house was unoccupied, and Suko, a family friend, suggested Kurabara rent it out to generate income. Suko knew Roger Shoot, who owns CRE, a property management company, from church and had friends who had properties managed by CRE. Suko told Kurabara she was going to talk to Shoot about managing Kurabara's property. After several conversations, Suko and Shoot agreed that CRE would manage the property and begin a "modest remodeling project." Tr. p. 7. In June 2012, Kurabara and Shoot spoke about renting the property and advertising. No written agreement was entered into by CRE and Kurabara or Suko. Suko acted as the "go between" for Kurabara and CRE, and the expenses incurred by CRE were to be paid out of the rents that were collected. Id. at 48. In addition to

---

[1] In her brief and appendix, her name is spelled Karubara. In the transcript and small claims court documents, her name is spelled Kurabara.

updating the landscaping, Kurabara requested that the air conditioning system be topped off with Freon and the boiler be de-winterized to "get the house rentable." Id. at 118. Kurabara understood that funds would be advanced for these three items. Ultimately, CRE did some additional work and cleaning, and the air conditioning unit and boiler needed additional repairs.

CRE rented the house in early July 2012, but those tenants moved out shortly thereafter because the air conditioning did not work. In October, CRE rented the house again. Eventually Suko discovered that CRE had incurred more expenses than she originally anticipated, and Kurabara terminated the management relationship with CRE and hired another management company.

In December 2012, CRE filed a notice of small claim to collect the outstanding balance of remodeling costs, repair bills, and management fees. In July 2013, Kurabara counterclaimed alleging that CRE damaged the home, that she incurred travel expenses in an attempt to mitigate damages, and that she was owed $2,408.00.

Over the course of several days in August 2013, the small claims court held a hearing on the matter. On November 4, 2013 the small claims court issued an order and found:

> 1. Plaintiff was employed by the Defendant in the Fall of 2012. No written agreement was ever executed, however, both parties took actions which created a contractual, owner-property manager relationship. Despite her protestations, Gracie Suko did act as the agent of Defendant, absentee landlord and owner, as a matter of law.
>
> 2. Plaintiff did find tenants and did make improvements to the subject property . . . some of which are now objected to

3

by Defendant, but all of which are within the scope of the property management relationship.

3. Defendant decided to replace Defendant [sic] with Clark Management and Rentals in November, 2012. Lori Cleek of Clark Management walked through the subject house upon being hired and found "no major problems".

4. This case should serve as an example of why parties in situations like this should always have a written contract.

App. p. 6. The small claims court entered judgment in favor of CRE in the amount of $4,724.29 and denied Kurabara's counterclaim. Kurabara filed a motion to correct error, which the small claims court denied. She now appeals.

**Analysis**

As an initial matter, CRE has not filed an appellee's brief. In that circumstance, we do not undertake to develop arguments for CRE. See Morton v. Ivacic, 898 N.E.2d 1196, 1199 (Ind. 2008). Rather, we will reverse upon Kurabara's prima facie showing of reversible error. See id. Prima facie error means at first sight, on first appearance, or on the face it. Id.

"Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility." Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1067 (Ind. 2006). Our supreme court has explained that this deferential standard of review is particularly important in small claims actions, where the sole objective is dispensing speedy justice according to the rules of substantive law. Id.

4

at 1067-68. However, this deferential standard does not apply to the substantive rules of law, which are reviewed de novo. Id. at 1068.

Kurabara argues the small claims court's finding that Suko was her agent was clearly erroneous. She contends there was no evidence that Suko had the authority to bind Kurabara as her agent. There are three types of authority: actual, apparent, and inherent. See Gallant Ins. Co. v. Isaac, 751 N.E.2d 672, 675 (Ind. 2001). Actual authority is created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires the agent to act on the principal's account. Id. Apparent authority refers to a third party's reasonable belief that the principal has authorized the agent's acts and arises from the principal's indirect or direct manifestations to a third party, not from the representations or acts of the agent. Id. Finally, inherent authority "is grounded in neither the principal's conduct toward the agent nor the principal's representation to a third party, but rather in the very status of the agent." Id.

Here, there is evidence of actual authority. At trial, Kurabara testified that she talked to Suko about having Shoot get the house rentable, which included updating the landscaping, topping off the air conditioner with Freon, and de-winterizing the boiler. See Tr. pp. 117-18. Kurabara also expected that funds would be advanced for those three items. Referring to the air conditioner repair, Kurabara stated, "This was one of the three (3) things I said to Roger . . . or said to [Suko] to tell Roger, and repeated it in an email, that that needed to be taken care of beforehand." Id. at 127 (ellipses in original). Kurabara testified that Shoot emailed Suko about the progress and that Suko forwarded

5

those emails to her. Kurabara explained that she kept asking Suko if she had received estimates or had any idea how much the repairs were going to cost. Kurabara testified that she spoke to Suko and Shoot about the terms of the lease with tenants. This evidence supports the finding of an agency relationship between Kurabara and Suko. To the extent Kurabara denied Suko was her agent, this is a request to reweigh the evidence, which we cannot do. Kurabara has not established that the finding that an agency relationship existed was clearly erroneous.

## II. Damages

Kurabara argues that the award of $4,724.29 in damages is erroneous. Our review of a damages award is limited, and we do not reweigh the evidence or judge the credibility of witnesses. Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC, 870 N.E.2d 494, 507 (Ind. Ct. App. 2007). We will reverse an award only when it is not within the scope of the evidence before the finder of fact. Id. An award of damages cannot be based on speculation, conjecture, or surmise and must be supported by probative evidence. Id.

Kurabara argues that there was no agreement for CRE to perform anything other than the landscaping work and that the additional expenses were unauthorized. At trial, Kurabara herself testified that she authorized CRE to do more than just the landscaping, including adding Freon to the air conditioner and de-winterizing the boiler to get the house rentable. Kurabara also agreed that she owed a cleaning fee, at least a portion of the utilities, and some advertising costs. Thus, we cannot agree with Kurabara that her agreement with CRE was limited to landscaping work.

6

Kurabara also argues that, because CRE hired someone who was not licensed to work on the fireplace gas line and install a pressure relief valve on the hot water heater, she is not responsible for those costs. For this proposition, Kurabara relies on 53 C.J.S. Licenses §117, which provides in part, "Unlicensed persons who contract to provide services for which a license is required for the purpose of regulation and protection may not recover on the contract." This section goes on to explain, however, "where incompetency, inexperience, or fraud is not involved, a licensing statute may not be invoked to avoid the payment of valid charges . . . ." 53 C.J.S. Licenses § 117. Assuming this provision applies in Indiana, on appeal, Kurabara does not allege fraud or that the gas line or hot water heater valve were incorrectly installed. Thus, she has not established that recovery for these repairs is barred.

Kurabara also cites certain provisions of the Indiana Administrative Code describing the licensing and education requirements of a property manager and contends that, at most, she and CRE had an agreement to provide landscape work and that CRE failed to disclose to her the additional work it was doing on the property.[2] As we have already discussed, Kurabara expressly agreed to at least some of the additional repairs. Further, even if CRE failed to inform Kurabara of the additional work performed, she cites no authority for the proposition that the failure to comply with administrative licensing requirements bars the recovery of payment in a breach of contract action. This is not a basis for reducing the damages award.

---

[2] Kurabara cites 876 IAC 2-8-13 and 876 IAC 2-85, which were repealed effective July 1, 2014.

7

Finally, Kurabara argues that CRE's exhibits did not support a damages award of $4,724.29. At trial, Shoot testified that he had accrued $4,724.29 in "hard costs." Tr. p. 13. He explained that, before the second tenant was secured, he had accrued $4,472.61 in costs and that in November there was a plumbing leak that cost $251.68 to repair. These expenses are reflected in Exhibit D. Thus, there is evidence to support the award of $4,724.29 in damages.

However, as Kurabara also points out, CRE's Exhibit D also reflects payments of $1,365.00, which CRE retained from rent it collected and put "toward remodel/repair money owed." This is consistent with Shoot's testimony that they retained half of the rent collected, a percentage of which was for CRE's management fee and the remainder of which was applied to the balance owed for the remodeling and repairs. The small claims court's order is silent regarding these payments. Accordingly, we must conclude that Kurabara has a made a prima facie showing of error regarding the amount of damages still owed. Thus, we remand for the small claims court to revise the damages award to reflect the $1,365.00 in payments retained by CRE or to explain why it did not include those payments in its order.

## Conclusion

There is evidence of an agency relationship between Suko and Kurabara. There is evidence to support damages in the amount of $4,724.29, but it is not clear that the small claims court accounted for the $1,365.00 in payments retained by CRE. Thus, we affirm in part, reverse in part, and remand.

8

Affirmed in part, reversed in part, and remanded.

BRADFORD, J., and BROWN, J., concur.